STATE OF IOWA v. CHAS. MORE, Appellant.

**Adultery:** EVIDENCE: *Acts subsequent to act charged.* On a prosecution for adultery, evidence from which sexual intercourse between the parties might be inferred to have occurred subsequent to the act charged in the indictment was properly received, where the acts were near enough in point of time and sufficiently significant to have a tendency to establish an adulterous disposition in the parties at the time of the act charged

CONVICTION SUSTAINED. On a prosecution for adultery, evidence of the subsequent acts of the parties, together with the circumstances of the act charged, of which there was no direct evidence, examined, and considered sufficient to support a conviction therefor.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

FRIDAY, DECEMBER 20, 1901.

THE defendant appeals from a judgment convicting him of adultery.—*Affirmed.*

*McCoun & Jennings* for appellant.

*Chas W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney-General, for the State.

LADD, J.—The court, over defendant's objections, admitted evidence of his undue familiarity with Edith Schrader, and of facts from which sexual intercourse with her might be inferred, occurring subsequent to the act of adultery for which the state elected to prosecute.

And some of the acts appear to have been accomplished in the neighboring state of Nebraska. In *State v. Smith,* 108 Iowa, 440, it was pointed out that in neither *State v. Donovan,* 61 Iowa, 278, nor *State v. Oden,* 100 Iowa, 22, did the court pass on the admissibility of such evidence. In each the rule excluding it is conceded, rather than determined, and the introduction of evidence of this character, which we think entirely proper, declared to have been without prejudice. Doubtless in some of the earlier cases in this country evidence was restricted as contended it should be by appellant, but the later text-books and decisions recognize the ordinnary course of human conduct as a proper element for consideration in such investigations. The disposition of the accused persons toward each other at the time alleged must necessarily have an important bearing on the deductions to be drawn from the incriminating circumstances proven, and this is ordinarily of gradual development, and not likely to suddenly dissappear. As said in *Thayer v. Thayer,* 101 Mass. 111 (100 Am. Dec. 110): "The evidence by which the act of adultery is proved is seldom direct. The natural secrecy of the act makes it ordinarily impossible to prove it except by circumstantial evidence. The circumstances must be such, indeed, as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt. But, when adulterous disposition is shown to exist between the parties at the time of the alleged act, then mere opportunity, with comparatively slight circumstances showing guilt, would be sufficient to justify the inference that criminal intercourse had actually taken place. The intent and disposition of the parties toward each other must give character to their relations, and can only be ascertained, as all moral qualities are, from the acts and declarations of the parties. It is true that the fact to be proved is the existence of a criminal disposition at the time of the act charged, but the indications by which it is proved may

extend, and ordinarily do extend over a period of time both anterior and subsequent to it. The rules which govern human conduct, and which are known to common observation and experience, are to be applied in these cases, as in all other investigations of fact. An adulterous disposition existing in two persons toward each other is commonly of gradual development. It must have some duration, and does not suddenly subside. When once shown to exist, a strong inference arises that it has had and will have continuance, the duration and extent of which may be usually measured by the power which it exercises over the conduct of the parties. It is the character of permanency which justifies the inference of its existence at any particular point of time from acts illustrating the preceding or subsequent relations of the parties." It was also held in *State v. Bridgman,* 49 Vt. 209 (24 Am. Rep. 124', that evidence of other acts of improper familiarity and adultery between the parties to the alleged offense, continuing from before until after the offense charged, and after indictment found is admissible, although it proves other and distinct offenses, to show the true relation of the parties to each other, and also to show that the restraints and safeguards of common deportment and conventionality, and of the natural modesty that is presumed to exist, have been broken through and displaced by the adulterous disposition and the habits of adulterous intercourse. The court, in *Crane v. People,* 168 Ill. 399 (48 N. E. Rep. 56) declared that: "Whatever may have been said to the contrary in certain cases, it must now be regarded as settled law that in such cases prior acts of improper familiarity or of adultery between the parties, whether they occurred in the same jurisdiction or not, and even subsequent acts which tend to show continued illicit relations between them, may be proved in explanation of or as characterizing the acts and conduct of the parties com

plained of, as constituting the particular offense charged."
In *State v. Witham,* 72 Me. 531, the court observed that:
"Latterly, courts and text writers are rapidly falling in with
the view that acts prior to and also subsequent to the act
charged in the indictment, when indicating a continuousness
of illicit intercourse, are admissible in evidence, as showing
the relation and mutual disposition of the parties; the recep-
tion of such evidence to be largely controlled by the judge
who tries the cause, and the evidence to be submitted to the
jury with proper explanation of its purpose and effect."
To the same effect, see *State v. Raby,* 121 N. C. 682 (28
S. E. Rep. 490); *State v. Wallace,* 9 N. H. 515; *State v.
Way,* 5 Neb. 283; *Brooks v. Brooks,* 145 Mass. 574 (14 N.
E. Rep. 777, 1 Am. St. Rep. 485); *Lefforge v. State,* 129
Ind. 552 (29 N. E. Rep. 34); *People v. Jenness,* 5 Mich.
305; *People v. Patterson,* 102 Cal. 239 (36 Pac. Rep. 436);
*Com v. Bell,* 166 Pa. St. 405 (31 Atl. Rep. 123); *Lawson
v. State,* 20 Ala. 65 (56 Am. Dec. 182); 2 McClain, Crim-
inal Law, section 1098. The period which the proof may
cover necessarily depends largely upon the particular cir-
cumstances of each case. If the acts are so remote or of a
character not tending to prove an adulterous disposition at
the time of the offense charged, they should be rejected. If,
on the other hand, they are near enough in point of time
or sufficiently significant in character to have a tendency to
establish that important element at such time, evidence of
them should be received. Possibly such evidence, as sug-
gested, may tend to prove bad character at the time of the
trial. Such is the trend of all testimony indicating crime,
but this is not ground for its exclusion, when offered for the
legitimate purpose of establishing a material element in the
proof. Nor is such a holding inconsistent with the rule re-

jecting evidence of the subsequent conduct of the prosecutrix in a seduction case. There, as here, the relations of the parties before and after the offense alleged may be shown, but other conduct of the prosecutrix subsequent thereto is not a matter of proof, for the very essence of the crime in a seduction case is the destruction of the character for chastity by means of falsehood and deceit; and the law is not guilty of the anomaly of treating a condition occasioned by a wrongful act as evidence that the act was not wrongful.

II. The state elected "to stand upon the occasion testified by Ann Marks, occurring in this county about the last of September." She related having visited Schrader's house, when she found defendant and Mrs. Schrader "cutting up and scuffling." In her own language: "I saw Mr. More put his arms around Mrs. Schrader and throw her on the bed. He then kissed her and then got on top of her. He remained there a few minutes. She was lying on her back on the bed, and offered no resistance. I did not notice whether he disturbed her clothing or not. This was about five o'clock. I stayed until about six. There was no one else present at the house. It was at Lenox, Taylor county, Iowa. I remember seeing him kiss her but once. I do not know how long he stayed there. I left about dark. I do not know whether he stayed there all night or not. He was there when I left. * * * We were all cutting up, and he was scuffling with me, also. * * * I was near the window when they were lying on the bed. I would have observed it, had her clothes been up." She testified this occurred in September. Another witness testified that defendant had confided to her in the latter part of September or forepart of October that he had had trouble with Mrs. Schrader's sister, with whom he had been keeping company during the summer; that he visited Mrs. Schrader in her husband's absence; and that if he did not look out,

he (the defendant) would steal his wife. About a month later the defendant quit work where both were employed in the afternoon, and was found by Schrader alone with his wife in the evening under suspicious circumstances. About November 26th they left Lenox separately, met at Creston the next morning, occupied the same room in Omaha, Neb., the following night, and then went to Randolph, Neb., where they passed about ten days together. Both deny having had intercourse in Taylor county, but we are inclined to think this a question, in view of all the circumstances, for the jury to pass on. Certainly the transaction related by Ann Marks indicated a strong inclination on the part of both to indulge their passions, and this is confirmed by their subsequent intimacy. The jury may well have found that, when opportunity was afforded by her departure, they lost no time in accomplishing what both were inclined to do.

III. The sixth paragraph of the charge was in harmony with the law as we have stated it. The jury may be assumed to understand the meaning of expressions in common use, and it was not for the court to determine the relative weight to be given to acts of familiarity before and after the particular act of adultery charged. That there were prior acts of familiarity appears from what has been said. Other rulings criticized are so evidently correct that they require no attention.—AFFIRMED.