OPINION OF THE COURT
Howard E. Goldfluss, J.
The defendant is charged in a two count indictment with rape in the third degree (Penal Law, § 130.25, subd 2) and endangering the welfare of a child (Penal Law, § 260.10). He moves herein to dismiss the indictment on the ground that both statutes defining the offenses, charged in the indictment, are unconstitutional on the ground that they deprive the defendant of equal protection of the law.
Rape in the third degree, as applied to the instant case, provides that a male 21 years of age or older is guilty when he engages in sexual intercourse with a female less than 17 years of age. The defendant asserts that the equal protection infirmity exists because under the statute only a male can be guilty whereas a female 21 years of age or older engaging in sexual intercourse with a male less than 17 years of age cannot be similarly charged.
The People contend that there is sound basis for the statutory differentiation, and that, since the female may be prosecuted under section 20.00 of the Penal Law for aiding and abetting, no discrimination exists.
To support his position, the defendant relies mainly on Meloon v Helgemoe (564 F2d 602), wherein the court struck *68 down a similar New Hampshire statute which provided that a male is guilty of a felony if he has sexual intercourse with a female under the age of 15. The court did in fact hold that this statute which did not make it a crime of any kind for a woman to have normal sexual intercourse with a male under the age of 15, violated equal protection.
However, a close scrutiny of the Meloon case indicates a dissimilar premise to the situation here. The New Hampshire law made no provision for punishment of the female under any circumstances, and the court laid great stress on that fact. Based upon the principle that a stricter scrutiny is required before a law which classifies by gender can pass constitutional muster, the court held that the State had a burden which it did not prove in the Meloon case. New Hampshire had an obligation to make some showing that by concentrating its enforcement resources on the gender class with more potential offenders, it could ignore the rest of the population altogether in achieving a greater protection for its children than a gender-neutral law would achieve. This, according to the Circuit Court, it failed to do.
Such a finding could be applicable here if there existed in New York a similar total immunity for the female as exists in New Hampshire. But there is no such immunity in New York. On the contrary, section 20.00 of the Penal Law provides: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.”
Therefore, a guilty-minded, active accomplice may be answerable as a principal even though the accomplice cannot commit the crime individually, and the fact that a female is legally, factually and physically incapable of committing the offense is no defense. (See People v Merfert, 87 Misc 2d 803.)
In addition, most jurisdictions differ with the reasoning by the court in Meloon, holding that a legislative classification based on physical characteristics because of sexual differences is not constitutionally defective. (See People v McKellar, 81 Cal App 3d 67; State v Drake, 219 NW2d 492 [Iowa]; Griswold v Connecticut, 381 US 479.) To succeed in a constitutional attack based upon class discrimination, one must show he is either a member of the class or similarly affected. This court *69 can safely take judicial notice of the fact that physiological differences between the sexes cause the male to fall in neither category and that therefore equal protection is not required (see People v Salinas, 551 P2d 703 [Col]).
The cases cited herein have adopted a traditional test in determining constitutional challenge. Simply put, the challenged statute must have some rational relationship to a legitimate State end. A statute should be struck down as violative of the equal protection clause only if based on reasons totally unrelated to the pursuit of that goal.
In the opinion of this court, no rational argument can be made which could uphold the position that rape in the third degree, as written (commonly called statutory rape), is not a legitimate and proper and desirable exercise of the legislative prerogative to pass laws toward the public good. But even if this court felt otherwise, and differed with the rationale and ultimate goal of the legislation, it is not empowered to sit as a superlegislative body to determine the desirability or propriety of statutes enacted by the Legislature.
Sex is the only possible classification if the obvious goal of the statute to protect young females from sexual intercourse is to be accomplished. Only the female can become pregnant, and the attendant problems with pregnancy, medical, psychological, moral and economic, are and should be the concern of an organized and civilized society. The adverse effects to the unwed mother of tender years, to the illegitimate child, and to society at large, are reasons enough for the desirability of the legislation.
It is true, of course, that gender based legislation has been rejected by the Supreme Court when based on administrative convenience (see Frontiero v Richardson, 411 US 677; Reed v Reed, 404 US 71), or on "archaic and overbroad” generalizations (see Schlesinger v Ballard, 419 US 498, 508), or on outdated misconceptions concerning the role of the female in the home rather than in the market place or the world of ideas (see Stanton v Stanton, 421 US 7; Taylor v Louisiana, 419 US 522). However, it is significant that the court upheld a statutory classification based upon a valid distinction between the sexes. (See Kahn v Shevin, 416 US 351.)
One final element of this issue bears reference. It has been intimated that equality of the sexes which is the underlying impetus of the proposed Equal Rights Amendment (ERA) now pending ratification, substantiates the defendant’s position.
*70 This court does not agree. The fundamental legal principle of ERA does not preclude legislation which regulates or deals with a physical characteristic unique to one sex. Any contrary interpretation would subvert the intent and meaning of ERA, beside violating every concept of common sense.*
The defendant makes a similar claim in connection with subdivision 1 of section 260.10 of the Penal Law, which is the basis for the second count. The applicable portion provides: "A person is guilty of endangering the welfare of a child when: (1) he knowingly acts in a manner likely to be injurious to the physical, mental, or moral welfare of a male child less than sixteen years old or a female child less than seventeen years old”. (Emphasis supplied.) He alleges that this classification of children into males and females of different ages is inherently discriminatory, a violation of equal protection, and that there is no acceptable basis for the said classification.
The same question must be asked and answered, i.e., does the challenged statute have some rational relationship to a legitimate State end. This court ascertained that no hearings were held in connection with the subsequently enacted statute, but it has examined the memoranda in support of the legislation.
It appears that the Mayor of the City of New York strongly supported and specifically requested its passage, citing its need because of specific problems of New York City which could apply similarly to any largely populated urban center. He emphasized that the city has become a haven for "cunning and scheming adult persons intimidating, exploiting, and victimizing visitors of young and tender years.”
He maintained that such conduct has resulted in serious impairment of the physical and moral welfare of young persons, and he was particularly concerned with runaway females under the age of 17 who come to New York City and were so corrupted by undesirable adults.
Thus, a line of distinction was drawn by the Legislature in age classification based upon the degree of vulnerability of the female as compared to the male. As stated, it is not important that this court agree with the rationale — or if the statute reviewed is the best possible legislation or whether valid State interest would be better served by another form of legislation *71 (see M. v M., 321 A2d 115 [Del]). What is important is that the court determine, and it does so determine, that the reasons given are a legitimate concern by the Legislature, and the passage of the legislation in question leads to a beneficial goal. If the age distinction is disturbing to some, it nevertheless is a valid exercise of legislative discretion which has, as its objective, to benefit the individuals involved and the public at large.
Motion to dismiss both counts of the indictment is denied.

 (See The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L J 872.)