STATE of Iowa, Appellee,

v.

**Thomas Arthur MUNZ, Appellant.**

**No. 69378.**

Supreme Court of Iowa.

Sept. 19, 1984.

---

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and J. Patrick White, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

The defendant Thomas Albert Munz appeals his conviction and sentence on two counts of third-degree sexual abuse. Iowa Code §§ 709.1, 709.4(5). He claims the trial court erred in several rulings on the admission of evidence and argues that section 709.4(5) violates his constitutional rights to privacy and equal protection. We affirm.

The evidence at trial revealed the following facts supporting the conviction. Munz lived for a time with a woman who had two children, a son and a daughter, by a prior marriage. Soon after Munz moved in, he began to have sexual relations with the twelve-year-old daughter, the victim in this case. This relationship continued over the next several years, first in the home then, when the girl's mother evicted Munz, at various other places including rooming houses and motels. At the time of the crimes charged here, March 1 and March 24, 1982, Munz was thirty-six and the victim was fourteen.

Iowa Code section 709.4 defines sexual abuse in the third degree:

Any sex act between persons who are not at the time cohabitating as husband and wife is sexual abuse in the third degree by a person when the act is performed with the other participant in any of the following circumstances:

. . . .

5. The person is six or more years older than the other participant, and that other participant is fourteen or fifteen years of age.

I. *The Evidence Rulings.*

The State introduced evidence of other acts occurring both before and after the dates of the crimes charged. The prior acts were shown in photographs of Munz and the victim taken at various times and places. The defendant complains that these photographs were "cumulative and highly prejudicial." In addition, the State introduced evidence through testimony of the victim that Munz had beaten her seven days after the last incident charged in an attempt to prevent her from breaking off the continuing relationship. Evidence of the subsequent act, it is claimed, was "irrelevant and more prejudicial than probative."

Our rules of evidence provide for limited use of other crimes or acts of a defendant:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Iowa R.Evid. 404(b). This rule is identical to federal rule 404(b).

Even if the proffered evidence is relevant, however, it may still be excluded under rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the [fact finders]." Iowa R.Evid. 404(b), advisory committee comment. *See also State v. Conner,* 314 N.W.2d 427, 429 (Iowa 1982).

**580**

A. *The Photographs of Prior Acts.* None of the pictures showing Munz and the victim engaged in various sex acts were taken on March 1 or March 24, the dates charged in the two counts of the information. Munz objected on the grounds the pictures were "cumulative" and "more prejudicial than probative." No relevancy objection was raised as to the photographs.

■ Even if we assume the evidence was cumulative, that is not a sufficient reason, standing alone, to require its exclusion; its admissibility still turns on the trial court's discretion. *Conner,* 314 N.W.2d at 429; *State v. Maxwell,* 222 N.W.2d 432, 435 (Iowa 1974). Moreover, the photographs in this case can scarcely be characterized as merely cumulative. They furnished graphic proof of prior sex acts with the defendant, a hotly contested issue at trial.

■ The question remains whether the relevancy of the photos was outweighed by prejudice to the defendant, as he claims. Iowa R.Evid. 403. This determination also lies in the discretion of the trial court, and we will reverse only upon abuse of that discretion. *State v. Harmon,* 238 N.W.2d 139, 145 (Iowa 1976); Iowa R.Evid. 403, advisory committee comment.

■ The photographs were, to put it mildly, explicit. Considered outside the factual context of this case, they could even be characterized as shocking. But the crimes charged were shocking, and the photographs of the prior acts merely embellished the verbal picture of the events already provided by the testimony of the victim. Under these circumstances, we are reluctant to find prejudice sufficient to override the probative value. *See, e.g., State v. Fuhrmann,* 257 N.W.2d 619, 625 (Iowa 1977) ("grisly nature of these photographs [of murder victim] is an unavoidable result of the nature of the killing"); *State v. Fryer,* 243 N.W.2d 1, 7 (Iowa 1976) (photograph of murder victim). The court did not err in admitting them into evidence.

B. *Evidence of Subsequent Event.* After the victim had testified about the sex acts of March 1 and March 24, she was asked on direct examination "[w]hen was your next contact, if any, with Tom Munz"? The defendant objected to evidence of this subsequent event on the ground it was irrelevant.

Initially, the trial court sustained the objection, but the county attorney argued the evidence was necessary to lend support to the victim's testimony to explain "why [the victim] did not tell anyone of her relationship with Mr. Munz prior to when she did." Although as defense counsel pointed out to the court the victim's reasons for failing to come forward from the beginning had not been called into question, the trial court reversed its ruling and allowed the testimony noting that "the not-guilty plea places everything in issue."

The victim then testified about a beating by Munz on March 31, seven days after the last offense. Based on her testimony that what took place on that day was not "sexual relations," defense counsel objected that her testimony "[would not] go to [Munz's] predisposition to have sex with her." That objection was also overruled. The victim testified that on that date she told the defendant she didn't want to "see" him any more, whereupon he forced her to remove her clothing, taped her hands above her head, and beat her with a leather belt.

Defendant argues that any testimony regarding events of March 31 had "no logical tendency to increase or decrease the probability of truth or the elements of the crime," *State v. Zaehringer,* 280 N.W.2d 416, 420 (Iowa 1979), and was therefore irrelevant. He asserts, as he did at trial, that even if some probative value exists, it is substantially outweighed by the danger of unfair prejudice.

In response, the State argues that testimony regarding the March 31 assault was relevant for two reasons: first, because it substantiated the witness's credibility; and second, because it showed "a passion or propensity for illicit sexual relations with a particular person concerned in the crime on trial." *State v. Spaulding,* 313 N.W.2d 878, 880 (Iowa 1981). This relevancy, it argues, was not outweighed by prejudice.

■ (1) *The credibility ground.* The State's argument that the questions regarding the subsequent incident were merely an attempt to bolster the credibility of the victim is confronted by the well-established principle that unless the credibility of a witness is first placed in issue, no sustaining evidence is allowed. *State v. Brandt,* 182 N.W.2d 916, 917 (Iowa 1971); Iowa R.Evid. 608(a) (evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise). *See also* 98 C.J.S. *Witnesses* § 471, at 349 (1957) ("As a general rule evidence is not admissible to sustain the credibility of an unimpeached witness....").

■ In this case, the victim was the State's first witness. The testimony about the beating was presented during her direct examination; hence, defense counsel had not had an opportunity to cross-examine her or call her credibility into question. Admission of this testimony cannot be sustained on the basis of the State's "credibility" argument.

(2) *The "propensity for illicit sexual relations" ground.* The State's alternative argument for admissibility of the beating evidence is based on the principles allowing evidence of similar acts in sex abuse cases.

■ Munz correctly articulates the general rule that evidence of other crimes is inadmissible because it has "no relevancy except to show the defendant is a bad person and thus likely committed the crime in question." *State v. Cott,* 283 N.W.2d 324, 326 (Iowa 1979). *See also,* Iowa R. of Evid. 404(b) ("evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or in order to show that he acted in conformity therewith."). The rule of exclusion is, of course, based upon the potential prejudicial effect of such evidence.

■ One of the exceptions to the general rule of exclusion allows the admission of evidence of prior sexual acts with the victim "in order to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." *McCormick's Handbook on the Law of Evidence* ± 190, at 449 (2d ed. E. Cleary 1972); *accord, State v. Spaulding,* 313 N.W.2d 878, 880 (Iowa 1981); *State v. Folkens,* 281 N.W.2d 1, 5 (Iowa 1979); *State v. Maetas,* 224 N.W.2d 248, 250 (Iowa 1974); *State v. Rankin,* 181 N.W.2d 169, 171 (Iowa 1970); *State v. Kinkade,* 241 Iowa 1259, 1261–62, 43 N.W.2d 736, 738 (1950); *State v. Neubauer,* 145 Iowa 337, 345–46, 124 N.W. 312, 315 (1910); Annot. 88 A.L.R.3d 12 (1978); Annot. 77 A.L.R.2d 841 (1971); Annot. 167 A.L.R. 565 (1947).

The questions presented on this issue are (1) whether subsequent acts, like prior acts, are admissible in any event, and (2) if so, whether the subsequent act here, the beating, was a "similar" act for such purposes. We answer both questions in the affirmative.

■ When we examine the rationale of allowing evidence of other acts in sex abuse cases, it becomes apparent that subsequent acts are as probative as those prior to the date of the charged offense. As Professor Wigmore notes, special kinds of inferences are probative on issues such as motive and tendency toward certain sexual conduct. II J. Wigmore, *Evidence in Trials at Common Law* §§ 387–402, at 328–69 (1940).

*Kinds of Inference.* The modes of inference circumstantially to a human quality or condition ... may be of three kinds, all of which come into use in the present subject:

(a) From circumstances tending to excite, stimulate, or bring into play the emotion in question;

(b) From outward conduct expressing and resulting from the emotion in question;

(c) From the prior or the subsequent existence of the emotion in question, as indicating its existence at the time in issue....

The first of these is a Prospectant indication ... the second is a Retrospectant

indication; the third is of both sorts. Each sort of inference has its own dangers and difficulties.

*Id.* at 328. Thus,

[t]he prior or subsequent existence of a sexual passion in A for B is relevant ... to show its existence at the time in issue. The circumstance that the prior or subsequent conduct exhibiting the passion is criminal does not alter the case nor affect the admissibility of the evidence....

*Id.* at 355.

Wigmore also addresses the specific issue of whether a subsequent act may furnish such an inference:

A *subsequent* existence of the desire is equally relevant with a prior one. It is true that the contingencies of error are different; *i.e.*, in the former case, the desire may have been first induced by intervening circumstances, in the latter it may have been ended by them; but the strength of these contingencies is no greater in one instance than in the other. If for example the parties have been intimate during the entire year 1890, and an act of adultery is charged on July 1, an adulterous desire on Dec. 31 carries no less persuasive weight than an adulterous desire on Jan. 1. That there is any distinction is generally repudiated.

*Id.* at 367. (Emphasis in original.)

This court has examined the admissibility of subsequent acts in several sexual abuse cases. In *State v. King*, 117 Iowa 484, 91 N.W. 768 (1902), the twelve-year-old victim testified that the defendant had intercourse with her in her home and that this was repeated a week or ten days later in a grove nearby. The defendant claimed error in the admission of testimony regarding the second act. The court held the testimony had been properly admitted stating:

It may be, as contended by appellant, that in most of the cases the proof related to acts preceding the particular offense charged, but in view of the purpose of such testimony to show the relationship and familiarity of the parties, and to corroborate the prosecutrix, we discover no good reason why evidence of acts

subsequent to that charged, if in some way connected with it, may not have as direct a bearing on those occurring before.

*Id.* at 490, 91 N.W. at 770. *Accord, State v. Powers*, 181 Iowa 452, 461, 164 N.W. 856, 859 (1917). ("If believed by the jury, [evidence of a subsequent sex act] had a tendency to prove properly that the mental attitude of the defendant was such as to make it probable that the offense charged was earlier committed."); *State v. More*, 115 Iowa 178, 180, 88 N.W. 322 (1901) ("evidence from which sexual intercourse between the parties [in adultery case] might be inferred to have occurred subsequent to the act charged was properly received, where the acts were near enough in point of time and sufficiently significant to have a tendency to establish an adulterous disposition in the parties at the time of the offense charged"); *State v. Candler*, 204 Iowa 1355, 217 N.W. 233 (1928) (evidence admissible in incest case which tended to show acts of incest between the defendant and the complaining witness after commission of offense charged).

The exceptions to the basic rule of exclusion of evidence of other crimes in a criminal prosecution, which render such evidence admissible for certain purposes, have been held to apply to evidence of offenses committed subsequently to the offense charged, as well as to evidence of prior offenses, if not too remote in point of time.

29 Am.Jur.2d *Evidence* § 329, at 378 (1959). *See also Penn v. State*, 164 P. 992 (Okla.1917); *People v. Thompson*, 212 N.Y. 249, 106 N.E. 78 (1904); *State v. McClain*, 240 N.C. 171, 81 S.E.2d 364 (1954); *Brown v. State*, 32 Ala.App. 131, 22 So.2d 445 (1945). Annot., *Evidence of Subsequent Criminal Offenses*, 92 A.L.R.3d 545, 589–99 (1979).

■ Evidence of the beating, if otherwise admissible as a "similar act," was not inadmissible on the ground it was subsequent to the acts charged.

(3) *Was this a similar act?* Munz points out that the beating was not a "simi-

lar" act from which the inference in question may be drawn because no "sexual relations" took place.

█ It is not necessary, however, that the prior or subsequent act be identical; it is a similar act for these purposes if it is probative on the matter of the defendant's sexual desires. Wigmore, *supra* § 399, at 367–68 ("The kind of *conduct* receivable to prove this desire at such prior or subsequent time is *whatever would naturally be interpretable* as the expression of sexual desire." (Emphasis in original.) Thus, in proving adultery, for example, "[s]exual intercourse is the typical sort of such conduct [constituting a similar act], but indecent or otherwise *improper familiarities* are equally significant.") (Emphasis in original.) *Id.* at 368.

In *Oden v. United States*, 410 F.2d 103 (5th Cir.1969), the prosecution sought to introduce evidence that the defendant, who was charged with interstate transportation of women for immoral purposes, had beaten one of the women several months later to prevent her escape. Despite the fact the subsequent acts were of a different character from those charged, the court held evidence of the beating, and other acts of intimidation, were not too remote in time and were relevant as to the defendant's intent at the earlier time.

The case of *State v. Alberts*, 199 Iowa 815, 820, 202 N.W. 519, 521 (1925), relied upon by Munz, must be distinguished. While *Alberts*, like the instant case, involved a physical assault on the victim after the act charged, its facts required a different result. In *Alberts*, a third party was permitted to testify, over objection, that she had witnessed the defendant at a later time striking the woman. She testified that the victim was playing the piano, and the defendant told her to stop. When she did not, he struck her. This act was clearly not sex related and would have virtually no probative value on the rape charge.

█ By contrast, the acts which occurred on March 31, 1982, between Munz and this victim were not distinct and unrelated to the crime charged. Rather, they create an inference of the defendant's "passion or propensity" for illicit sexual relations with the victim. The beating took place in a motel room, as had prior sexual acts. The victim was forced to remove all of her clothing and to lie on the bed, where the beating was administered. While these acts are not "sex acts" under our statutory definition, Iowa Code section 702.17, they are similar enough to the acts charged to create an inference as to the defendant's state of mind at the earlier times. The seven-day lapse in time did not render the subsequent act too remote.

We conclude, although on a different theory, that the trial court properly admitted this evidence. It was relevant, and its probative value was not outweighed by any prejudice.

C. *The "Unresponsive" Answer.* At trial, the victim's mother testified on cross-examination by defense counsel that Munz had asked her daughter to become a prostitute. The defendant's motion to strike the answer as unresponsive was overruled, and Munz raises this as an issue on appeal. Defense counsel's cross-examination, and the mother's answers, were as follows:

Q. And you also feel probably a little bit guilty about allowing your daughter to go up to Cedar Rapids every weekend for eight months if you felt that she was having sex with him, don't you? A. I don't feel guilty.

Q. You don't feel guilty at all? A. I didn't know that she was having sex.

Q. You don't think—Well,—A. I never knew until the day she came home April 5 and informed me that Tom wanted her to become a prostitute.

MR. MEYER: I ask that that answer be stricken because it's not responsive, your Honor.

THE COURT: Objection is overruled. The motion is overruled.

█ The scope of cross-examination lies largely in the discretion of the trial court. *State v. Ege*, 274 N.W.2d 350, 357 (Iowa 1979); *State v. Cornell*, 266 N.W.2d

15, 21, *cert. denied,* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978); *State v. Sheffey,* 250 N.W.2d 51, 55 (Iowa 1977). Here, defense counsel was bearing down on the question of how much the mother knew about her daughter's sexual activities, and her answer was responsive. She said she didn't know her daughter was having sex at all until she was informed of Munz's prostitution plans. The trial court did not abuse its discretion in overruling the motion to strike.

## II. *Constitutional Challenges.*

Munz raises two constitutional challenges to the facial validity of Iowa Code section 709.4(5): (1) that it violates a fundamental privacy right under the due process clause (private sexual conduct between consenting adults); and (2) that it violates the equal protection clause by creating an arbitrary and irrational age classification (those six or more years older as opposed to those less than six years older than the fourteen to fifteen-year-old).

■ We have held that challenges to the validity of a statute must be raised at the earliest opportunity in the progress of the case. *State v. Ritchison,* 223 N.W.2d 207, 214 (Iowa 1974). A pretrial motion to dismiss, under Iowa Rule of Criminal Procedure 10(2) is the vehicle to use in such cases. Here, the defendant raised no constitutional attack on the statute until his motion for judgment of acquittal, Iowa Rule of Criminal Procedure 18(8). Even then his constitutional attack was limited to equal protection; invasion of privacy was not raised until his motion in arrest of judgment.

■ The defendant has thus failed to preserve error on either of these issues. *See State v. Allen,* 304 N.W.2d 203, 206 (Iowa 1981).

Munz concedes on appeal that he failed to preserve his constitutional arguments but raises them in support of his argument that he was denied effective assistance of counsel. *See State v. Miles,* 344 N.W.2d 231, 233 (Iowa 1984); *Washington v.*

*Scurr,* 304 N.W.2d 231, 235 (Iowa 1981). We review the constitutional issues only insofar as they bear on Munz's claim that he was denied effective assistance of counsel.

■ Under principles recently announced by the Supreme Court, assistance of counsel is ineffective for sixth amendment purposes only if the party claiming it shows (1) that counsel's performance was deficient; and (2) that actual prejudice resulted. Unless both showings are made, a claim of ineffective assistance must fail. *Strickland v. Washington,* —— U.S. ——, ——, 104 S.Ct. 2052, 2053, 2064, 80 L.Ed.2d 674, 693 (1984). *See also Taylor v. State,* 352 N.W.2d 683, 684 (1984). Munz relies upon both the United States and Iowa Constitutions. Assuming the principles of both constitutions will be identical insofar as they bear on the issues, we apply them simultaneously.

A. *Privacy Right.* Munz relies on cases involving criminal statutes seeking to regulate certain sexual activity, citing, among others, *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (statute prohibiting sale of contraceptives to minors) and *State v. Pilcher,* 242 N.W.2d 348, 359 (Iowa 1976) (statute prohibiting sodomy).

■ Acknowledging that the state has a legitimate interest in regulating the sexual activity of young persons, Munz nonetheless argues that interest is not present here because the statutory scheme defines children as those *under* fourteen years of age. Iowa Code § 702.5. We do not agree; the statute's two-tier system treats those under fourteen with even greater care than those fourteen to fifteen. In cases involving minors, not just those under fourteen, the state has wide latitude in regulating sexual activity.

We hold the state has a significant interest in regulating sexual activity on the part of its young people. As the compelling interest test we have adopted for adult sexual behavior is not applicable to minors, this significant interest permits the state to fix the age at which

minor females may consent to sexual intercourse.

*State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). Distinctions based on age, at least as they apply to privacy rights of minors, are valid if they foster "any significant state interest ... that is not present in the case of an adult." *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 75, 96 S.Ct. 2831, 2834, 49 L.Ed.2d 788, 808 (1976). A compelling state interest is not required.

The rationale supporting a state interest, including the dangers of pregnancy, venereal disease, damage to reproductive organs, the lack of considered consent, heightened vulnerability to physical and psychological harm, lack of mature judgment, and others, are discussed in *Carey* and *Coil. See also State v. Cobb,* 311 N.W.2d 64, 67–68 (Iowa 1981); *State v. Sullivan,* 298 N.W.2d 267, 271 (Iowa 1980); *State v. Drake,* 219 N.W.2d 492, 495 (Iowa 1974); *People v. Gonzalez,* 81 Cal.App.3d 274, 278, 146 Cal.Rptr. 417 (1978); *In re Interest of J.D.G.,* 498 S.W.2d 786 (Mo. 1973); *Olson v. State,* 95 Nev. 1, 588 P.2d 1018 (1979); *Goodrow v. Perrin,* 119 N.H. 483, 403 A.2d 864 (1979); *People v. Dozier,* 72 A.D.2d 478, 424 N.Y.S.2d 1010 (1980).

■ There appear to be no cases holding a privacy right prevents the state from criminalizing an adult's sexual activity with a minor. The constitutional privacy argument was specifically rejected in *Goodrow,* 119 N.H. at 486, 403 A.2d at 866. (Consensual sex with one thirteen to sixteen years old).

■ A right-of-privacy argument would have failed Munz even if it had been raised. Thus, he can show no prejudice from his counsel's failure to do so.

■ B. *Equal Protection.* Munz claims that the six-or-more-years-older distinction "lacks rational relationship to a legitimate state interest." *Cobb,* 311 N.W.2d at 67. He asserts that the statute is "overinclusive—[and] underinclusive." The test is the traditional rational basis equal protection analysis. *State v. Elam,*

302 N.C. 157, 162, 273 S.E.2d 661, 665 (1981); *People v. Prainito,* 97 Misc.2d 66, 69, 410 N.Y.S.2d 772, 773 (1978). *But see Gonzalez,* 81 Cal.App.3d at 277, 146 Cal. Rptr. at 419 ("classifications which deal with restraints upon personal liberty are subject to the strict scrutiny test applicable to equal protection of fundamental interests.").

Munz argues it is irrational to permit a fourteen-year-old to have sex with a nineteen-year-old, but not with a twenty-year-old, or to punish a twenty-year-old for having sex with a fourteen-year-old, but not with a fifteen-year-old. He argues that a protection rationale cannot support the classification because a fourteen or fifteen-year-old is just as pressured by peers as by someone older.

The legitimacy of the state's interest was discussed above. The purpose of such age-differential sex abuse statutes (regardless of consent) has been frequently described and approved. *See, e.g., Cobb,* 311 N.W.2d at 67 ("age has traditionally been a factor in defining sex crimes."). *See also Sullivan,* 298 N.W.2d at 273; *Drake,* 219 N.W.2d at 495; and cases cited above.

This court has approved classifications which discriminate among sex abuse defendants on the basis of age. *Drake,* 219 N.W.2d at 492 (upholding prior Iowa statute prohibiting sex between a male over 25 and female under 17).

We hold the legislature could reasonably decide that men beyond a certain age should have sufficient maturity and judgment to be held responsible for conduct which might be excusable in a younger person. Not all will agree this age should be fixed at 25. Sound reasons might be advanced for either side of this argument. However, determining the line which separates what is criminal from what is not lies peculiarly within the sphere of legislative discretion, and we have no right to substitute our judgment for that of the legislature unless we find the classification to be arbitrary, capricious, and without reasonable relationship to the purposes of the statute.

As already indicated, we cannot reach such a conclusion here.

*Id.* at 496.

Other jurisdictions are in agreement. *See, e.g., Gonzalez,* 81 Cal.App.3d at 277, 146 Cal.Rptr. at 419 (upholds, even under strict scrutiny standard, criminality of sodomy upon one under fourteen by one more than ten years older); *Olson,* 95 Nev. at 3, 588 P.2d at 1019 (upholds greater penalty for sex with a female under sixteen when perpetrated by a male twenty-one or older than when by male under twenty-one); *Elam,* 302 N.C. at 162, 273 S.E.2d at 665 (upholds criminality of sex where defendant is over sixteen, the victim is under sixteen, and there is at least, a five-year age difference). *See also In re Interest of J.D.G.,* 498 S.W.2d at 792; *People v. Whidden,* 51 N.Y.2d 457, 462, 415 N.E.2d 927, 928, 434 N.Y.S.2d 936, 939 (1980); *Dozier,* 72 A.D.2d at 484, 424 N.Y.S.2d at 1015 ("a recognition that the significant age gap between the protected class and the class to be held responsible creates a greater potential for harm than if the victim and defendant were closer in age."); *Prainito,* 97 Misc.2d at 68, 410 N.Y.S.2d at 774.

Counsel's failure to raise the equal protection argument did not prejudice the defendant's case; it lacks merit in any event. We reject Munz's claim of ineffective assistance of counsel.

We find no reversible error in the record and, accordingly, affirm the judgments.

AFFIRMED.