# IN THE COURT OF APPEALS OF IOWA

No. 15-2174
Filed October 26, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**NICHOLAS S. BLAUFUSS,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

A convicted sex offender challenges the representation by his trial counsel. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A jury found Nicholas Blaufuss guilty of three counts of sexual abuse in the third degree for committing sex acts with a child who was twelve or thirteen years old. His appeal involves the jury's consideration of evidence that he engaged in additional, uncharged acts of sexual abuse against the same child. Blaufuss argues his trial attorney was constitutionally remiss in two ways: (1) in not objecting to testimony about those uncharged acts, and (2) in not requesting a limiting instruction. Because Blaufuss cannot show his attorney was ineffective in either instance, we affirm.

## I.       Facts and Prior Proceedings

D.J. was twelve years old in August 2014 when her family fell on hard times. Her mother suffered a series of strokes and lost her job at the convenience store. Her stepfather could not afford the contract payments on their house with just his earnings, so the parents, D.J., and her two younger stepbrothers moved in with family friend Donald Chipman in Burlington. Chipman's house had three bedrooms: one occupied by Chipman, one by D.J.'s parents, and one by her brothers. D.J. was left to sleep on the living room couch or in the boys' bedroom.

Coincidentally, thirty-year-old Blaufuss arrived at Chipman's house about the same time as D.J.'s family. D.J.'s mother had known Blaufuss since elementary school. Blaufuss pitched a tent in Chipman's yard or slept in his garage but had mostly unfettered access to the kitchen, bathroom, and living room as well.

D.J. told her mother Blaufuss made her uncomfortable but did not elaborate on why she felt that way. During the six weeks D.J.'s family stayed with Chipman, the girl began acting out. Her school performance suffered, she contacted adult men online, and she brought an eighteen-year-old date into the house without permission. She also started cutting herself with glass shards. Her mother lined up a counselor for D.J.

In October 2014, shortly after she turned thirteen, D.J. moved out of Chipman's house and in with other relatives. Months later, she told an aunt and her counselor that Blaufuss had sexually abused her repeatedly between August and October 2014. D.J. eventually described the incidents to a forensic interviewer with the Child Protection Center (CPC) in Muscatine.

The State charged Blaufuss with three counts of sexual abuse in the third degree, in violation of Iowa Code section 709.4(1)(b)(2) (2013), by trial information filed in July 2015. Blaufuss's jury trial started on October 13, 2015. During the State's case-in-chief, then fourteen-year-old D.J. had the following exchange with the prosecutor:

> Q. Has the defendant ever touched you in a way you didn't like? A. Yes.
> Q. When did that occur? A. Almost every night from the middle or end of August, like somewhere in between there, until I moved out.
> Q. When did you move out? A. In October of 2014.

D.J. then testified to three specific instances of sexual abuse committed by Blaufuss. First, D.J. testified that once when her mother asked her to retrieve a household item stored in Chipman's garage, Blaufuss followed her, pushed her onto his bed, and "put his penis in [her] vagina." She said the penetration "hurt"

and she "bled for a while." Second, she recalled that when her mother was napping and her stepfather was at work, Blaufuss "laid [her] down on the couch" in the living room and started kissing her, unbuttoned her pants, and "put his fingers in [her] vagina." When she said, "Stop," he said, "Shut up." D.J. testified to a third encounter, when she was in the kitchen doing dishes: "[H]e told me to get on my knees, and I didn't want to, so he forced me down . . . and he tried to pry my mouth open, and he got it open, and then he put his penis in my mouth." D.J. testified Blaufuss ejaculated into her mouth, giving her a "choking feeling." D.J. also told the jury that on a separate occasion Blaufuss took off her shirt and "masturbated . . . all over her."

In the defense case, Blaufuss's counsel questioned Burlington police detective Melissa Moret about her report of the CPC interview.

> Q. Do you remember from your report whether she was asked about other times that had happened and her response was that it happened several times? A. I believe that was one of her responses, yes.
>
> Q. Okay. In your experience as a detective, is there a difference between several times and almost every night? A. First of all, that—in that same report you're referring to, it does say that in order to get verbatim what she said or exactly what her words were, to watch that video, this is a summation. My report is of what she said and may not be exactly how she said it. To get exactly how she said it, you need to watch the video, but, no, I don't believe that there's a huge difference between the two, no.

Blaufuss then testified on his own behalf, denying the sexual abuse occurred. The case was submitted to the jury at 10:07 a.m. on October 14, and the jury returned its guilty verdicts at 11:32 a.m.

The district court imposed indeterminate ten-year sentences on all three counts, running the sentences on counts one and two consecutively to each

other and concurrently to the term for count three. Blaufuss now appeals, challenging the performance of his trial counsel.

## II.    Scope and Standard of Review

We review claims of ineffective assistance of counsel de novo. *See Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). To establish a claim for ineffective assistance of counsel, Blaufuss must show his trial counsel failed to perform an essential duty and prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The inability to prove either element is fatal to an ineffective-assistance claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Under the first prong of the *Strickland* test, we presume trial counsel performed competently unless Blaufuss proves by a preponderance of the evidence counsel failed to perform an essential duty. *See* 466 U.S. at 690. In deciding whether counsel failed to perform an essential duty, we measure counsel's performance against prevailing professional norms for the criminal defense bar. *See State v. Ary*, 877 N.W.2d 686, 704–05 (Iowa 2016). Under the second prong of the *Strickland* test, Blaufuss must prove a reasonable probability existed that the result of the proceeding would have been different but for counsel's failure to perform an essential duty. *See id.* at 705.

We often preserve claims of ineffective assistance of counsel for postconviction-relief proceedings. *See State v. Reyes*, 744 N.W.2d 95, 103 (Iowa 2008). But in this case, we find the record sufficient to resolve Blaufuss's allegations on direct appeal. *See id.*

### III.    Analysis

Blaufuss focuses on two omissions by his trial attorney: "the failure to object to evidence of uncharged prior sexual abuse" and "the failure to request an appropriate limiting instruction that addressed the evidence of prior sexual abuse." We will address each of these claims in turn.

### A.  Objection to Evidence of Other Sexual Abuse

The evidence of concern to Blaufuss is threefold: (1) Detective Moret's testimony that D.J. reported "Blaufuss had repeatedly sexually abused her over the course of a few months"; (2) D.J.'s testimony that Blaufuss touched her in a way she didn't like "almost every night" from mid-August through October 2014; and (3) D.J.'s testimony regarding a specific incident where Blaufuss took off her shirt, masturbated in front of her, and ejaculated on her skin—which the State did not charge as a separate offense.

Blaufuss acknowledges evidence of other sexual acts with the same victim *may* be admissible under Iowa Code section 701.11.[1]  *See id.* at 102.  But

---

[1] Iowa Code § 701.11(1) provides:

> In a criminal prosecution in which a defendant has been charged with sexual abuse, evidence of the defendant's commission of another sexual abuse is admissible and may be considered for its bearing on any matter for which the evidence is relevant. This evidence, though relevant, may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. This evidence is not admissible unless the state presents clear proof of the commission of the prior act of sexual abuse.

Further, clear proof may be established through direct testimony from the victim of the prior alleged assault. *Reyes*, 744 N.W.2d at 101.

But "[a]dmitting evidence of the accused's sexual abuse of *other* victims under Iowa Code section 701.11 based only on its value as general propensity evidence violates the due process clause of the Iowa Constitution." *State v. Cox*, 781 N.W.2d 757, 772 (Iowa 2010) (emphasis added).

Blaufuss urges his trial counsel had a duty to object to the evidence alleging other sexual conduct here because its probative value was substantially outweighed by the danger of unfair prejudice. He contends the "alleged repeated sexual abuse of a child" is of such a nature that it has a "tendency to produce intense disgust." Blaufuss argues because this prosecution came down to a credibility contest between him and D.J., the jury should not have been allowed to consider the uncharged incidents. For this last point, Blaufuss relies on *State v. Redmond*, 803 N.W.2d 112, 125 (Iowa 2011) ("Juries may be more likely to misuse prior-conviction evidence in cases with weak evidence or cases that are he-said-she-said swearing matches.").

To address his last point first, we find *Redmond* inapposite. *Redmond* did not address section 701.11(1) but rather interpreted Iowa Rule of Evidence 5.609(a)(1) as it applied to prior convictions of the accused. *See id.* at 122 (stating only when the prior conviction's probative value outweighs its prejudicial effect is the conviction admissible for impeachment purposes). By comparison, evidence of other sex acts is *only subject to exclusion* under section 701.11(1) on the ground that its probative value is substantially outweighed by the danger of unfair prejudice. *See Reyes*, 744 N.W.2d at 100.

The State contends Blaufuss's trial counsel was not obligated to object to the evidence of other sex acts alleged by D.J. because the testimony was admissible "to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." *See State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981) (citation omitted); *see also State v. Wright*, No. 12-2138, 2014 WL 956064, at *3 (Iowa Ct. App. Mar. 12, 2014). We agree the

challenged evidence had strong probative value. The evidence was crucial to the prosecution's case because Blaufuss denied any sexual contact with her. *See State v. Paulson*, No. 06-0141, 2007 WL 461323, at *4 (Iowa Ct. App. Feb. 14, 2007) ("[T]he defendant completely denied any sexual abuse of [the victim], which directly contradicted [the victim's] description. Therefore, the need for other evidence was substantial.").

On the "unfair prejudice" side of the fulcrum, the challenged evidence was not the focus of the trial, its nature was similar to the underlying charges, and it was less likely to arouse the jurors' sense of horror than the three charged counts described in detail during D.J.'s testimony. *See State v. Coleman*, No. 02-0423, 2003 WL 21919175, at *2 (Iowa Ct. App. Aug. 13, 2003) (finding no abuse of discretion in admitting evidence of prior bad act under rule 5.404(b) where both acts involved "identical individuals, the identical location, similar circumstances, and similar conduct"). Moreover, the alleged repetition of the molestation did not call for exclusion of the evidence when the jurors were already considering three specific instances of abuse purportedly occurring over the course of several weeks. Any attempt by defense counsel to exclude the evidence of other sexual acts would have been without merit. "Failing to make a meritless objection does not constitute a breach of an essential duty." *State v. Henderson*, 804 N.W.2d 723, 726 (Iowa Ct. App. 2011).

**B. Request for a Limiting Instruction**

Alternatively, Blaufuss contends counsel delivered a subpar performance by not requesting a limiting instruction regarding the evidence of other sexual abuse. On appeal, he advocates for the following uniform jury instruction:

> You have heard evidence that the defendant allegedly committed other acts with (victim) [before] [after] (date of offense charged). If you decide the defendant committed these other acts, you may consider those acts only to determine whether the defendant has a sexual passion or desire for (victim). You may not consider them as proving that the defendant actually committed the act charged in this case.

Iowa Crim. Jury Instructions 900.11.

Blaufuss argues that without such a limiting instruction, the jurors were allowed "to infer that he had a general propensity to commit sexual abuse, and therefore, decide the verdict on an improper basis." He also argues counsel had no strategic reason for failing to request such an instruction.

We are not persuaded by these arguments. The State did not offer evidence Blaufuss had a general propensity to commit sexual abuse against young girls. The disputed evidence all involved his improper conduct toward D.J. While a limiting instruction may have been proper, its absence did not amount to *Strickland* prejudice. In other words, had counsel secured a limiting instruction regarding the other-acts evidence, it was not reasonably probable the jury would have acquitted Blaufuss on the three counts of sexual abuse against D.J. *See State v. Lambert*, 612 N.W.2d 810, 815 (Iowa 2000) (finding no reasonable probability of acquittal had counsel handled jury instructions differently).

Moreover, the record reveals trial counsel did have a strategic reason to avoid instruction 900.11. That instruction contemplated the jurors might believe Blaufuss committed the other acts alleged by D.J. and then directed them to consider those other acts only to determine whether Blaufuss had a "sexual passion" for her. In his closing argument, counsel urged the jurors to disbelieve D.J. entirely, pointing out that in her CPC interview she said the sexual abuse

happened "several times" but in her trial testimony she claimed it happened "almost every night." The comparison allowed counsel to assert: "Those are wildly inconsistent accusations." The defense strategy was to discount *all* of D.J.'s accusations against Blaufuss. The limiting instruction would have undermined that strategy by suggesting a scenario where the jurors believed D.J.'s allegation of almost nightly molestation. *See State v. Munz*, 355 N.W.2d 576, 581 (Iowa 1984) (recognizing courts allow "the admission of evidence of prior sexual acts with the victim in order to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial" (citation omitted)).

Blaufuss has not met the *Strickland* standard for reversal on either of his claims against trial counsel.

**AFFIRMED.**