# IN THE COURT OF APPEALS OF IOWA

No. 23-0163
Filed February 7, 2024

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ROBERT STEWART EAKIN Sr.,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Hardin County, John R. Flynn, Judge.

A defendant appeals two convictions for third-degree sexual abuse. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ. Buller, J., takes no part.

**TABOR, Presiding Judge.**

This appeal marks the second time we have reviewed Robert Eakin's sexual abuse convictions. In 2020, a jury convicted him of three counts of sexual abuse in the third degree. On appeal, we affirmed one count but reversed the other two convictions and remanded for retrial. *State v. Eakin*, No. 20-1688, 2022 WL 3067271, at *5 (Iowa Ct. App. Aug. 3, 2022). A second jury returned guilty verdicts on both counts. Eakin again seeks a new trial, alleging the district court should have excluded evidence of the sexual abuse underlying the conviction that we affirmed in the first appeal. Because that evidence was admissible under Iowa Code section 701.11 (2022), we affirm.

## I.      Facts and Prior Proceedings

Robert and Mary Eakin adopted A.E. from the foster care system when she was ten years old.[1] In her preteen years living with the Eakins, A.E. would sometimes be left alone with Robert. On those occasions, he would often ask her to "crack" his back by walking on it as he lay on his stomach on the floor. In the same timeframe, outside Mary's presence, Robert repeatedly talked about sex education—or what he called "the birds and the bees"—with A.E.

When A.E. turned thirteen, Robert started demanding more. A.E. recalled that he would "[j]ust have me crack his back and then he'd ask for other stuff." By "other stuff" she meant "sexual activities." For instance, he would lay on his back on the floor, pull down his pants, and ask her to put her hand on his penis and "perform masturbation for him." When asked how many times Robert asked her

---

[1] Because it is necessary to discuss both Robert Eakin and his wife in this opinion, we will use their first names for clarity.

to touch his penis, she answered "too many to count." She also testified that he solicited her to perform "oral sex" on him countless times. Most often the sex acts occurred in A.E.'s bedroom. Whenever she refused to engage in these sex acts, Robert "would get whiney and then he'd keep asking." When she gave in, he would reward her with social media time on his cell phone or a piece of pie.

Mary was never present when the sex acts occurred. She often left the house to care for her elderly mother who lived in an apartment across the street. But one evening in April 2020, Mary returned to the house and found A.E.'s bedroom door closed. When Mary pushed it open, she discovered Robert naked from the waist down and A.E. dressed in pajamas. According to A.E., she had her hand on Robert's penis just before Mary walked in. Mary's discovery of the abuse "scared" A.E. so much that she cut the screen, climbed out her bedroom window, and ran to a friend's house. The friend's family encouraged A.E. to tell law enforcement what had been happening, which she did.

The State charged Robert with one count of second-degree sexual abuse and four counts of third-degree sexual abuse. The jury acquitted him of second-degree sexual abuse and one count of third-degree sexual abuse; it convicted him of three counts of third-degree sexual abuse. Those counts identified acts in 2018, 2019, and 2020. In the first appeal, we reversed two convictions on a jury instruction error.[2] But because there was overwhelming evidence to support the April 2020 offense, we affirmed that conviction.

---

[2] Our decision also found that Robert's admissions to police that A.E. "touched his privates" were inadmissible as a product of promissory leniency by the interviewing detective. In the second trial, the court only allowed the detective to testify about Robert's initial denial that any sex acts occurred with A.E.

On retrial, the State again alleged that Robert sexually abused A.E. from 2018 until she ran from the house in 2020. The State sought a pretrial ruling on the admissibility of testimony from Mary and A.E. about that April 2020 encounter. It asserted that Mary's observations "would support that [Robert] had recently engaged in the same sexual act described by A.E." The State argued that the evidence was admissible under Iowa Rule of Evidence 5.404(b) and Iowa Code section 701.11. The defense disagreed, moving to exclude testimony about the April 2020 encounter. Robert's motion in limine alleged that the testimony was inadmissible as propensity evidence; was not relevant to the crimes at issue; and if relevant, was unduly prejudicial. The court allowed the evidence to come in under section 701.11. At trial, Mary corroborated A.E.'s version of that final act of sexual abuse by Robert. Although he testified at the first trial, Robert chose not to take the witness stand at the second trial.

The jury convicted Robert on both counts. And the court imposed consecutive ten-year sentences. Robert now appeals.

## II. Scope and Standard of Review

We review rulings admitting evidence under Iowa Code section 701.11 for an abuse of discretion. *State v. Reyes*, 744 N.W.2d 95, 99 (Iowa 2008). We only find an abuse when the district court exercises its discretion on clearly untenable grounds or to a clearly unreasonable extent. *Id.*

### III.    Analysis

Robert raises a single issue on appeal: Did the district court abuse its discretion in allowing the jury to hear evidence about the sexual abuse occasioning the conviction affirmed in the first appeal?[3]

Because the district court found the evidence admissible under Iowa Code section 701.11, we start with that statute:

> In a criminal prosecution in which a defendant has been charged with sexual abuse, evidence of the defendant's commission of another sexual abuse is admissible and may be considered for its bearing on any matter for which the evidence is relevant.  This evidence, though relevant, may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  This evidence is not admissible unless the state presents clear proof of the commission of the prior act of sexual abuse.

Iowa Code § 701.11(1).[4]

This provision invites a two-step analysis.  First, the State must offer "clear proof" that the defendant in a sexual-abuse prosecution committed another act of sexual abuse against the same victim.  Direct testimony from the victim is sufficient

---

[3] The State contends that Robert did not preserve error on his challenge to Mary's testimony because defense counsel objected only during A.E.'s testimony.  But because the district court granted Robert's request to have a standing objection to the other-acts evidence challenged in his motion in limine, we find error preserved as to both witnesses.  *See State v. Juste*, 939 N.W.2d 664, 672 (Iowa Ct. App. 2019) (finding error preserved but noting that "standing objections are not a favored trial practice").

[4] Our supreme court has held that this statute is constitutional when applied to other acts of sexual abuse involving the same victim.  *Reyes,* 744 N.W.2d at 102. But it is unconstitutional with respect to the admissibility of other sexual abuse involving a different victim.  *See State v. Cox*, 781 N.W.2d 757, 762 (Iowa 2010).

clear proof to meet that requirement.[5]  *See Reyes*, 744 N.W.2d at 101.  Once the State clears that hurdle, the evidence "may be considered for its bearing on any matter for which it is relevant."  Iowa Code § 701.11(1).  Second, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  *Id.*  In reviewing the district court's ruling, we retrace both steps of the statutory test.

### A.  For what matter was the 2020 incident relevant?

Robert notes that the State's purpose for offering this evidence was to show his "sexual motivation and attraction specifically to this victim."  Robert then counters that "given the nature of the State's case against [him] for the charged offenses, the issue of [his] passion for illicit sexual relations with A.E. was not a *legitimate* issue at trial."  Why not?  In his view, the evidence was not relevant because he did not contend the acts were innocent or accidental nor was identity an issue.  Rather, his defense was "a complete denial that the sex acts occurred."

Contrary to Robert's reading of the statute, admission of other sexual abuse under section 701.11 is not limited to proving a lack of accident or the identity of the perpetrator.  If there's clear proof of another sex act by the accused against the same victim, the fact finder may consider it for *any matter* for which it is relevant.  *See State v. Thoren*, 970 N.W.2d 611, 625 (Iowa 2022) ("Iowa Code section 701.11 expressly allows propensity evidence in sexual assault cases.").  Here, there was a legitimate issue as to whether the sex acts alleged by A.E. in

---

[5] Here, the proof was even clearer.  Recall that the first jury found proof beyond a reasonable doubt to convict Robert of the 2020 sexual abuse, and we found overwhelming evidence to support that conviction in the first appeal.

fact happened.  The jury in the second trial heard that Robert denied the allegations in his police interview.  Therefore, Mary's corroborative testimony about the April 2020 sexual abuse was relevant to whether the charged conduct actually occurred. *See State v. Wright*, No. 12-2138, 2014 WL 956064, at *3–4 (Iowa Ct. App. Mar. 12, 2014); *see also State v. Blaufuss,* No. 15-2174, 2016 WL 6396345, at *1– 4 (Iowa Ct. App. Oct. 26, 2016) (rejecting claim counsel was ineffective for failing to object to evidence of prior sexual abuse because evidence "was crucial to the prosecution's case because Blaufuss denied any sexual contact with her").  The district court did not abuse its discretion in allowing the jury to consider the April 2020 sexual abuse as relevant to Robert's propensity for illicit sexual relations with A.E.  *Reyes*, 744 N.W.2d at 102; *see State v. Munz,* 355 N.W.2d 576, 581 (Iowa 1984) (explaining that "subsequent acts are as probative as those prior to the date of the charged offense").

## B. Was the probative value of the 2020 incident outweighed by the danger of unfair prejudice and jury confusion?

As his fallback position, Robert contends that the district court should have excluded this evidence "because its probative value was substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury." He asserts that evidence of the April 2020 event was "similar in many ways to the allegations of the previous incidents."  That similarity, in his estimate, makes it more prejudicial.  *See Cox*, 781 N.W.2d at 769.  He also maintains that testimony

about the April 2020 incident "dominated" the trial, overshadowing the evidence related to the charged conduct.[6]

Addressing Robert's last point first, we disagree that the proof underlying the affirmed conviction "dominated" the second trial. The district court did not allow the subsequent-act evidence to become the "focus" of the jury's attention. In denying Robert's new trial motion, the court found the April 2020 "evidence was narrowly tailored and ultimately very similar to the overall sexual abuse allegations made by the victim." And contrary to Robert's contention, the similarity of the 2020 offense to the charged offenses increased its probative value and decreased the danger of unfair prejudice. *See Reyes*, 744 N.W.2d at 103 (upholding admission of prior sexual abuse because it was "offered in a direct, concise, and noninflamatory fashion and was similar to the underlying charge against Reyes").

Beyond its similarity to the charged conduct, the 2020 incident was essential to telling the story of these crimes. Because A.E. alleged that Robert had been sexually abusing her for years and she said nothing, the prosecution had the task of explaining A.E.'s delayed disclosure to the jury. The events of April 2020 were inexorably linked to that explanation. The abuse surfaced only when Mary walked into A.E.'s bedroom and found her husband in the middle of the sex act. The substantial probative value of that event was not outweighed by the risk of unfair prejudice.

---

[6] Robert notes that not only did A.E. and Mary tell the jury about that later event, but A.E.'s friend and her friend's father testified that the event precipitated A.E.'s report to police.

Finally, any risk of prejudice was diminished by the district court giving the jury this cautionary instruction:

> Evidence has been received concerning a subsequent wrongful act alleged to be committed by the defendant on [A.E.]  The defendant is not on trial for this act.  This evidence must be shown by clear proof and such evidence may only be considered for the purpose of establishing the defendant's sexual passion or desire for [A.E.]  You may not consider this act as proving that the defendant committed the acts charged in this case.

The district court did not abuse its discretion by relying on Iowa Code section 701.11(1) to admit evidence of the April 2020 sexual abuse.

**AFFIRMED.**