*152 OPINION OF THE COURT
Leah Marks, J.
Questions have arisen in these cases concerning the legality and appropriateness of the New York City Department of Social Services’ motions to withdraw their petitions to approve foster care and the mothers’ motions to dismiss.
The petitions ask the court to determine whether the children needed foster care placement at the time the "Voluntary Placement Agreements” were signed, or whether the mother understood the agreement she signed placing a child into foster care, or whether the agency is planning appropriately for the children’s future and should keep them in foster care. All the mothers in these cases were under 18 years old when the children were born.
The issue arises because recent regulations have amended 18 NYCRR — Department of Social Services so that the children (usually young babies) are no longer considered in foster care. In general, lawyers for the children object to permitting these regulations to be a basis for withdrawing or dismissing the petitions. They object even more strongly in those cases in which the voluntary agreement in issue was signed or the petition for review was filed before July 14, 1993, the effective date of the regulations.
This court finds that those cases where the mother moved to dismiss can be and hereby are dismissed on her motion. The court finds that in the other cases where the Department of Social Services moved to withdraw the petitions, the petitions can be and hereby are withdrawn.
HISTORY
Until 1973, the court had no jurisdiction to review either the voluntary placement agreements under which children entered foster care or the continuation of such foster care.
The reasons for the grant of jurisdiction were many. Problems existed (as they do now) in fulfilling the goals of the foster care system. The agencies regularly failed to return children to their parents when they should have been returned. The parents were usually ignorant of their legal rights; therefore, they were unable to enforce their right to have their children returned to them. In addition, the agencies failed to help the parents solve the problems that led to the placement. Perhaps most important in granting jurisdic *153 tion to the Family Court was the fact that children were being lost in the system; many were forgotten entirely.
Court review was not considered a constitutional requirement, only a legislative attempt to cure administrative problems. As a result, appellate courts have regularly forgiven the Commissioner’s lapses in seeking review of the care given children in foster care. Children have been declared in placement legally although the placements were never reviewed.
YOUNG MOTHERS IN FOSTER CARE
When a minor in foster care became a parent, that minor was asked to sign a "voluntary placement agreement” because this was the door to receiving support. The Family Court declared the "agreement” valid largely because the young mother had no real choice; she could not care for the baby. Sometimes the Commissioner and the court declared the baby in voluntary foster care even if the mother had a plan for the child outside the system. The baby was effectively removed from the young mother.
Often the "voluntary” nature of the agreement was a sham. A young mother might be deprived of the right to reenter her foster home until she signed the "voluntary” agreement. This might happen even if the alleged father’s family was willing to accept responsibility for the baby.
The change now in effect permits a baby to be supported by the Commissioner so long as that baby remains with the baby’s mother. The mother is not required to sign away rights to the child.
EFFECT OF CHANGE
The system of court review pretends to ensure good child care for children in foster care by adding stirrers to the pot.
Permitting the babies to escape the system is intended to improve their position. The baby’s parent can transfer custody to a relative without interference from the "child care agency”.[1] At least for these babies, court review cannot be used as an excuse to delay movement for months while everyone waits for the review.
This court finds the regulations apply to "voluntary placement agreements” signed and foster care reviews filed before the effective date of the regulations. If there were a review of the agreement or foster care already in effect, the court would *154 decide the appropriateness of the foster care plan.[2] The Commissioner is now ready to keep all these children out of foster care, and to promise the baby will be cared for with the mother. There cannot be a "foster care” plan.
Another goal of court review of the voluntary placement is to ensure reasonable efforts were made to prevent the baby’s placement into foster care. The Commissioner, the mother, and the baby have a right to have the baby out of foster care. Permitting withdrawal or dismissal results in the achievement of that desirable goal.
Since 1988, title IV, part E of the United States Social Security Act has permitted reimbursement for care of a child whose mother is in foster care so long as the child lives in the same foster home or child care institution as the mother.
New York State is just beginning to use the law, and there is no reason to prevent its use.
OTHER PREFERABLE GOALS
The Commissioner’s new plan should be encouraged as a possible forerunner of system reform. Instead of pretending foster care review is a panacea, and fighting for it, it might be better to consider changing other aspects of our financially and personally costly foster care system.
For example, foster care review never touches upon the Commissioner’s practice of placing unrelated teenagers of different sexes in the same home, thereby encouraging an increase in babies conceived by children in the Commissioner’s care. Nor does it have effect on the private agencies well known for the number of minors who become parents in their "care”.
Perhaps some of the small administrative savings resulting from the new procedure can be used to prevent children in foster care from giving birth. Serious consideration must be given by the Commissioner to the need for educating children in foster care (and the mothers and fathers who placed them) to the wide range of population prevention methods including sterilization. The number of children in our society supported by the Commissioner increases regularly. Young mothers and fathers say they can’t care for their children while the mother sits in court — pregnant again.
The Commissioner has always had a right to discharge a *155 child to a parent without court approval. This new method of financing child care does not impact adversely on anyone. The Commissioner’s withdrawal of the petitions is no more than another way of achieving that end. Many programs are financed without court review; this now becomes another.

. 18 NYCRR 426.2, 426.3 (b) (1), (2).

. Social Services Law § 358-a.