THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
WAYNE DOZIER, Appellant.

First Department, February 14, 1980

## APPEARANCES OF COUNSEL

*Donald E. Gilbert* for appellant.

*Vida M. Alvy* of counsel *(Billie Manning* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Convicted, upon his plea of guilty, of rape in the third degree, in that being over the age of 21 years, he had sexual intercourse with a female less than 17 years of age (Penal Law, § 130.25, subd 2), defendant challenges New York's statutory rape law as violative of due process and equal protection. Specifically, defendant claims that the statute offends constitutional precepts because it does not permit ignorance, fraud or mistake as to the female's age to be asserted as a defense and, further, that it arbitrarily and capriciously fixes the age at which a female may consent to sexual intercourse at 17 years.[1]

In support of his due process challenge defendant claims that complainant, before engaging in sexual relations with him, showed him an identification card which represented that she was 18 years of age, and that had he known that she was not even 17 he would have refrained from having intercourse with her.[2]

We find that the statute serves a significant State interest in that it protects a certain class of minors from any adverse consequences of sexual intercourse, even if consensual. Following long-settled principles, we also find no constitutional prohibition against imposing criminal liability for conduct in which *mens rea* is not an element of the offense.

---

1. In dealing with sex offenses, the Penal Law (§ 130.05, subd 3, par [a]) provides that a person is deemed incapable of consent when, *inter alia,* "he is * * * less than seventeen years old".

2. Before pleading guilty defendant unsuccessfully raised the same issue in a motion to have the statute declared unconstitutional.

In considering defendant's equal protection argument we take note at the outset of the test to be applied. Generally, in evaluating whether a statute violates the equal protection clause a court must apply a "rational basis" test and determine whether a classification which affects a group of citizens differently from others "rests on grounds wholly irrelevant to the achievement of the State's objective." *(McGowan v Maryland,* 366 US 420, 425; see, also, *Lindsley v Natural Carbonic Gas Co.,* 220 US 61; *Metropolitan Co. v Brownell,* 294 US 580; *Minnesota v Probate Ct.,* 309 US 270.)

Where fundamental interests are involved, however, or where the classification is deemed suspect, i.e., the statute differentiates on the basis of race, alienage or nationality, a strict scrutiny test must be applied. (See, e.g., *Skinner v Oklahoma,* 316 US 535; *Loving v Virginia,* 388 US 1; *Oyama v California,* 332 US 633.) Under this test constitutionality turns on whether the law in question is "necessary to promote a *compelling* governmental interest". *(Shapiro v Thompson,* 394 US 618, 634.)

In the midst of these two tests the possibility of a third has arisen in evaluating gender-based statutes: "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " *(Reed v Reed,* 404 US 71, 76.)* Subsequent to the *Reed* decision, however, a plurality of the Supreme Court applied the strict scrutiny test in an evaluation of a gender-based plan to provide fringe benefits to members of the uniformed services. (See *Frontiero v Richardson,* 411 US 677.) Inasmuch as the *Frontiero* court mustered a majority for the result and not for the "strict scrutiny" test, it remains unclear that classifications based upon sex are suspect, and thus subject to strict judicial scrutiny. (See, e.g., *Craig v Boren,* 429 US 190, 197; *Orr v Orr,* 440 US 268, 279-280; *Califano v Webster,* 430 US 313, 316-317.)

But whatever test is employed with regard to gender-based statutes, the Supreme Court has clearly demonstrated that age is not a suspect classification. Distinctions based on age, at least as they apply to the privacy rights of minors, are valid if they foster "any significant state interest * * * that is not present in the case of an adult." *(Planned Parenthood of Mo. v Danforth,* 428 US 52, 75.) This standard is less rigorous than the "strict scrutiny" test, since "the power of the state to

control the conduct of children reaches beyond the scope of its authority over adults". *(Prince v Massachusetts,* 321 US 158, 170.) "[T]he law has generally regarded minors as having a lesser capability for making important decisions." *(Carey v Population Servs. Int.,* 431 US 678, 693, n 15.)

The question for resolution then is whether the prevention of sexual intercourse by unmarried females under 17 serves a significant State interest not present when the proscribed activity is undertaken by females 17 years of age and older. Since other sections of the Penal Law specifically protect females under 14, the class protected by the statute under challenge is comprised of females aged 14 to 16, inclusive.[3]

Challenges to statutory rape statutes have, generally, centered on distinctions based on gender. (See, e.g., *Flores v State,* 69 Wis 2d 509; *People v Green,* 183 Col 25; *People v Mackey,* 46 Cal App 3d 755; *State v Elmore,* 24 Ore App 651.) The experience in New York has been no different. (See, e.g., *People v Whidden,* 71 AD2d 367; *People v Mndange-Pfupfu,* 97 Misc 2d 496; *People v Smith,* 97 Misc 2d 115; *People v Prainito,* 97 Misc 2d 66; *People v Weidiger,* 96 Misc 2d 978.)

Although such challenges have, for the most part, been unsuccessful, in *Meloon v Helgemoe* (436 F Supp 528, affd 564 F2d 602, cert den 436 US 950), a United States District Court held unconstitutional a New Hampshire statute which imposed penal sanctions upon a male who had sexual intercourse with a female less than 15 years of age. The District Court stated (436 F Supp, *supra,* at p 532) that "there is no valid reason for singling out the male for criminal treatment where the act is consensual." In its affirmance the Court of Appeals discussed, in a footnote, the cases in which State courts had upheld the validity of their States' statutory rape laws. One of the decisions was *State v Drake* (219 NW2d 492 [Iowa]), which upheld an Iowa statute that punished a male over the age of 25 who had intercourse with a female under the age of 17. The *Helgemoe* court commented on the *Drake* decision as

---

**3.** New York's statutory scheme for sex offenses (Penal Law, art 130), consisting of sexual misconduct (§ 130.20), rape (§§ 130.25-130.35), sodomy (§§ 130.38, 130.40-130.50) and sexual abuse (§§ 130.55-130.65), provides for three other instances of criminality based on the victim's sex and age: sexual misconduct, a class A misdemeanor (§ 130.20, subd 1) where the victim is under seventeen; rape in the second degree, a class D felony (§ 130.30) where the victim must be under 14 and the defendant over 18; and rape in the first degree (§ 130.35, subd 3) where the victim must be under 11. Thus, it should be noted that the degree of the crime increases in proportion to the youthfulness of the victim.

follows: "Not only does this age disparity significantly affect the purposes for which such a statute might be enacted but the high age of the potential female victim lends greater credence to a pregnancy prevention rationale." *(Meloon v Helgemoe,* 564 F2d, *supra,* at p 605, n 4.)

Of course, the specific claim here is not that the New York statute discriminates on the basis of sex, per se, but rather that it unreasonably fixes 17 as the age below which a woman becomes a victim, regardless of her consent.[4] We think it significant, however, that a court which found a statutory rape statute unconstitutional on the ground of discriminatory gender classification, would comment approvingly on a decision upholding a statute proscribing the same conduct, but taking into account factors such as the victim's pregnancy potential and age disparity between the actors.

The focus of inquiry, therefore, must be directed to the nature of the State's interest, if any, in prohibiting sexual intercourse by unwed females under 17, and the reasonableness of age 17 as the line of demarcation between consensual incapacity and a female's right to sexual freedom equal to that of her male consort.

Two immediate interests come to mind. First, and most obvious, is the problem of preventing pregnancy. "Along with pregnancy comes all of the attendant psychological, medical, sociological, and moral problems, including questions of whether to have an abortion or to bear the child." *(State v Drake, supra,* at p 495.) Secondly, although many females under 17, such as those in prepubescence, are physically incapable of childbearing, younger girls, at the same time, are susceptible to physical injury resulting from sexual intercourse. The Court of Appeals for the First Circuit, which affirmed the declaration of unconstitutionality of the New Hampshire statute in *Meloon (supra),* recently rejected a gender-based challenge to a similar law in Maine, noting that "physical injury resulting from sexual intercourse is uniquely suffered by young females". *(Rundlett v Oliver,* 607 F2d 495, 503.)

The State has a legitimate concern that females 16 years and younger do not become pregnant or suffer physical injury, and as a result, find themselves facing practical problems for

4. Current legislation in the United States fixes the age of consent at ages varying from 10 to 18 years. (65 Am Jur 2d, Rape, § 17.) Until September 1, 1967, New York fixed the age of consent at 18 years. (See Penal Law of 1909, § 2010, for history.)

which their youth has not prepared them. Forced marriage, unwed motherhood, adoption, abortion, the need for medical treatment and precipitate withdrawal from school are just some of the considerations which often have to be faced, so it can be discerned that the State's concern stems from more than a dogmatic insistence on appropriate adolescent behavior.

Adolescence is a period of physical and emotional turbulence, a time when "patterns of behavior are laid down, when environmental stimuli of all sorts must be integrated into a workable sense of self, when sensuality is being defined and fears elaborated, when pleasure confronts security and impulse encounters control". (Gaylin, Book Reviews, 77 Yale LJ 579, 592-593, as cited in *Ginsberg v New York*, 390 US 629, 642, n 10.) In short, adolescence is a time of discovery and experience. The vulnerability of so significant a segment of our society during such a sensitive period of its development imposes a responsibility upon the State to assure that what should be a normal and natural experience does not for the unprepared become a *raison de regretter*, physically or emotionally.

In *Ginsberg v New York (supra,* at p 640), the Supreme Court upheld the constitutionality of a statute which forbade the sale of obscene literature to minors, stating that "The State also has an independent interest in the well-being of its youth." However flexible the Supreme Court may be in its efforts to define obscenity (see, e.g., *Roth v United States,* 354 US 476, 485; *Memoirs v Massachusetts,* 383 US 413, 418; *Redrup v New York,* 386 US 767, 770-771; *Miller v California,* 413 US 15), it is significant that even with a First Amendment issue at stake, it remains steadfast in recognizing the State's interest in protecting minors.

While we recognize that there are those in the protected class, particularly the older and more mature, who may be capable of engaging in sexual intercourse without suffering any adverse consequences, especially those resulting from pregnancy and physical injury, we are not convinced that any significant portion of the class as a whole is so emotionally and psychologically prepared that the protection should be lifted. Nor should the maturity of some deprive all of the others in the class of the protection of the law to which they are entitled. "The disabilities of infants are really privileges, for the object is to secure infants from damaging themselves

\* \* \* by their own improvident acts." *(Matter of Nori v City of Yonkers,* 274 App Div 545, 551; see, also, 31 CJ, Infants, § 25, p 1001, citing 1 Blackstone's Comm, p 464.) That society, in adopting and ratifying the Twenty-sixth Amendment to the United States Constitution, has seen fit to lower the age of majority to 18 and no further is evidence to us that although it now acknowledges the development of a sense of responsibility among youth at an earlier age than previously recognized, it is not convinced that adult decisions may be made by 17 year olds, let alone those 16 and younger. We note also that in New York a female under the age of 18 years may not marry without the written consent of her parents. (Domestic Relations Law, § 15, subd 2.)[5]

Moreover, under the particular statute here challenged, New York State has not seen fit to hold criminally responsible all males who engage in intercourse with females between the ages of 14 and 16, but only those 21 years of age or older. This, it seems to us, bespeaks a recognition that the significant age gap between the protected class and the class to be held responsible creates a greater potential for harm than if the victim and defendant were closer in age. A girl under 17 is subject to a variety of emotional and psychological wants which can often be exploited by an "older man". In those cases where the male is under 21 years of age, sanctions are still prescribed but, of course, a significantly less severe penalty is provided. (Penal Law, §§ 130.20, 70.15, subd 1.)

We are not unaware of the effect of changing mores on legislation such as is involved here. Nor are we blind to the possibility, and perhaps, likelihood, that what we say here may someday be seen as the product of antiquated thinking. We take note of language of the Chief Judge of the Court of Appeals of Oregon in discussing his State's statutory rape law: "As the law governing the permissible limits of legal distinctions between men and women evolves, there is a danger that anything we say today will be found amusing by future generations because of a changed social and legal climate \* \* \* The statutory scheme here attacked is, frankly a hangover from an earlier era when double standards applying to men and women were more widely accepted. Nevertheless, I think it reasonable to conclude that this statutory scheme *currently* survives constitutional scrutiny". *(State v Elmore,* 24

---

5. Marriage by a female under the age of 14 years is prohibited. (Domestic Relations Law, § 15-a.)

Ore App 651, 655 [concurring opn].) Likewise, the statute here challenged serves a significant State interest, although many people, particularly those within the reach of its protection, may view it as an unwarranted infringement upon private life-styles. Social legislation hardly ever pleases everyone. We merely state that the justification of the statutory rape law rests not on a morality to which not all of our citizens may subscribe, but rather on the premise that physical and psychic injury can be the result when the members of the class sought to be protected engage in acts, the consequences of which they may neither perceive nor appreciate.

■ Defendant's other argument, that his due process rights were violated because subdivision 2 of section 130.25 of the Penal Law does not allow ignorance, fraud or mistake as a defense,[6] ignores an established principle of law that "public policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." (Shevlin-Carpenter Co. v Minnesota, 218 US 57, 70; see, also, Smith v California, 361 US. 147, 151.) This public policy is often demonstrated "in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se." (United States v Balint, 258 US 250, 252.) Where statutes not requiring mens rea as an element have been struck down, it is generally because the crime itself was malum in se, with its roots in the common law, and not a crime malum prohibitum, deriving its essence from statute. (See Morissette v United States, 342 US 246.) With a statute which is malum prohibitum, honest intent or no intent at all is not a factor. (People v Radich, 26 NY2d 114, 125, affd 401 US 531, reh den 402 US 989; see, also, People v Werner, 174 NY 132, 134; People v Kibler, 106 NY 321, 322-323.) We find no infirmity in a statute which, in the State's exercise of the police power, forbids 21-year-old males from having intercourse with females under 17, regardless of whether the accused is aware of the female's age.

---

**6.** The Penal Law § (15.20, subd 3) provides that "Notwithstanding the use of the term 'knowingly' in any provision * * * defining an offense in which the age of a child is an element thereof, knowledge by the defendant of the age of such child is not an element of any such offense and it is not, unless expressly so provided, a defense to a prosecution therefor that the defendant did not know the age of the child or believed such age to be the same as or greater than that specified in the statute."

*Sandstrom v Montana* (442 US 510), upon which the dissent relies in urging reversal, is inapposite. There, the Supreme Court had before it a murder statute in which intent was a specific element of the crime. In *Sandstrom (supra,* at p 515) a charge that "the law presumes that a person intends the ordinary consequences of his voluntary acts", was found defective because it impermissibly shifted the burden of proving intent, and freed the State from the duty to prove " 'every fact necessary to constitute the crime * * * charged.' " *(Supra,* at p 520, citing *Matter of Winship,* 397 US 358, 364.) Here, neither the statute in question nor any judicial instruction[7] shifted the burden of proof. *Mens rea* is simply not an element of New York's statutory rape statute.

Accordingly, the judgment, Supreme Court, Bronx County (GORFINKEL, J.), rendered June 22, 1978, convicting defendant, upon his plea of guilty, of rape in the third degree and sentencing him to five years' probation, should be affirmed.

KUPFERMAN, J. (dissenting). The defendant has preserved his rights to raise the constitutional question that his conviction of statutory rape (Penal Law, § 130.25, subd 2) is in violation of the Fourteenth Amendment to the United States Constitution in that subdivision 3 of section 15.20 of the Penal Law provides that his knowledge of the age of the minor is not an element of the offense. He contends that the complaining witness not only voluntarily consented to sexual activities with the defendant, but that she also produced an identification card to substantiate her verbal declaration that she was over the age of 18.

While used in another context, the analysis of the United States Supreme Court in *Sandstrom v Montana* (442 US 510), with respect to the question of "intent" indicates that an absolute presumption may not be made that one acted purposefully and knowingly. (Cf. *People v Hernandez,* 61 Cal 2d 529.)

This matter should be reversed and remanded for trial.

MURPHY, P. J., BIRNS and SANDLER, JJ., concur with SULLIVAN, J.; KUPFERMAN, J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on June 22, 1978, affirmed.

---

7. Defendant's plea of guilty was entered before trial.