OPINION OF THE COURT
Paula J. Hepner, J.
Three[1] child abuse petitions were filed on March 1, 1993 against respondent Maria M. (respondent M.), the children’s mother, and Dominique P., the 20-year-old boyfriend of the 15-year-old subject child, Leslie. The Commissioner of Social Services (hereinafter CSS) charged each respondent with sexual abuse of Leslie C. because the "Respondent mother has allowed Respondent Dominique P. to reside in the family home despite having knowledge that the subject child, Leslie, is having sexual intercourse with the said Respondent in violation of Penal Law § 130.38. The Respondent mother has acknowledged this to the Child Welfare Administration caseworker. In addition, the subject child, Leslie, is pregnant.”[2] The petition also charged respondent M. with educational neglect and inadequate supervision and guardianship: (a) for her failure to send the children, Leslie and Ferdinand, to school on a regular and consistent basis; (b) because the child Leslie "has run away in the past and the Respondent mother failed to contact the police to file a report;” and (c) because the Respondent mother "refuses to cooperate with the Child Welfare Administration in their efforts to work with the family in getting the children into school and referrals made.”
On June 15, 1993 respondent M. moved to dismiss the petition pursuant to CPLR 3211 (a) (7) on the grounds that the petition failed to state a cause of action under sections 1012 *602 and 1013 of the Family Court Act.[3] She also moved for dismissal, pursuant to Family Court Act § 1051 (c), asserting that on the facts presented the aid of the court is not required and, further, that public policy requires dismissal of the petition in the interest of justice. On August 9, 1993, this court reserved decision on the motion believing it would be an abuse of discretion to dismiss the petition against respondent M. without holding a hearing to determine whether any of these children require protection. (Matter of Rhonda T., 99 AD2d 758 [2d Dept 1984].)
The fact-finding hearing commenced on January 4, 1994 and was continued to March 1, 1994 and March 15, 1994. Respondent M. appeared by counsel but did not appear in person, and the trial proceeded on inquest. Ulku Nouri, social work supervisor for Coney Island Hospital, and Paul Kosowski, caseworker for the Child Welfare Administration (hereinafter CWA), testified on behalf of the Commissioner. The petitioner offered into evidence the following documents: hospital records for Leslie C. pertaining to the delivery of her infant, Santa Maria C.; a Department of Social Services (DSS) 2221 report of suspected child abuse and maltreatment dated February 22, 1993; a DSS 2221 report of suspected child abuse and maltreatment dated December 23, 1992; a letter from Abraham Lincoln High School; a DSS 2221 report of suspected child abuse and maltreatment dated February 25, 1993; school records from Teen Aid High School; and school records from Abraham Lincoln High School.
The Commissioner asks for a finding of abuse against respondent M. because she did not take suitable and appropriate measures to "proscribe the sexual relations of her daughter.” The petitioner contends that respondent M. allowed a sex offense[4] to be committed against her daughter, Leslie, by *603 permitting the child to sleep and have sex with a 20-year-old man in her home, which culminated in a teenage pregnancy, and that respondent M. took no action to protect Leslie from being sexually abused and exploited by Dominique P.[5] The petitioner also asks for a finding of educational neglect on behalf of both Ferdinand and Leslie, neither of whom have attended school regularly since 1992. The petitioner argues she need not show actual impairment to the children since education, under the State law, is compulsory and children are required by law to go to school.
Respondent M. moves to dismiss the educational neglect allegations on the ground that there was no showing of impairment to the children. The respondent argues the children, now ages 15 and 17, voluntarily chose not to attend school and she should not be liable for their conduct at this point in their lives, particularly when CSS was unable to secure their regular attendance upon instruction when they were remanded to the Commissioner’s care. Notwithstanding the presumption of incapacity set forth in Penal Law § 130.05 (3) (a), respondent M. also seeks dismissal of the abuse allegations because there was no proof offered to establish that Leslie, who is a sexually active teenager, did not consent to the sexual conduct at issue.
The Law Guardian takes the position that the educational neglect allegations must be dismissed in the absence of any proof of impairment. Furthermore, she argues that the caseworker did all he could to help remedy the problem and the family members were uncooperative. The Law Guardian also moves to dismiss the sex abuse allegations on the ground that the petitioner failed to establish a connection between Dominique P.’s residence in the home and Leslie’s pregnancy. That Leslie was found to have gonorrhea, chlamydia and trichomonas, she contends, does not support a finding of sex abuse in cases involving sexually active teenagers. The Law Guardian asks for dismissal of the petition pursuant to Family Court Act § 1051 (c) since the aid of the court is not required. Decision was reserved in order to give the court time to review the testimonial and documentary evidence in the rec *604 ord and to consider the points and authorities raised by counsel in their summations.
FINDINGS OF FACT
Having had the unique opportunity to see, hear and assess the witnesses, and to review the documents admitted into evidence, the court makes the following findings of fact based upon the material, relevant, credible and competent evidence in the record:
1. Leslie C. was born on September 8, 1978 and Ferdinand C. was born on February 8, 1977. They reside with respondent M.
2. CSS became involved with the family after receiving a report of suspected child abuse and maltreatment (DSS 2221) in July 1992. Even though the allegations of the original DSS 2221 were "unfounded,”[6] the caseworker continued working with the family from September 1992 to February 1993 to get respondent M. to make appointments and attend meetings with the Committee on Special Education so that Ferdinand could be reenrolled in school.[7] Respondent M. was uncooperative, saying either she did not feel well or she could not take off from work to do these things.
3. Another report of suspected child abuse or maltreatment was received by CSS on December 23, 1992. The report was made by Ferdinand and concerned his sister, Leslie, who had been missing from the home since some time after November 19, 1992. Respondent M. did not search for Leslie or make any attempts to find out where she was. However, Leslie did call and speak to respondent M. on the telephone during the time she was "missing.” Leslie returned to the home on December 25, 1992. While Leslie was away from the home, she was staying with her boyfriend. When she returned to the home, she was four months pregnant.
4. In February 1993, CSS received a third DSS 2221 report of suspected child abuse or maltreatment concerning Leslie’s absence from school.
5. School records in evidence for the child Leslie show that she is diagnosed as "learning disabled” and attends a resource *605 room program with counselling as a related service. In June 1992 she was promoted from seventh to eighth grade. She attended 144 days during the 1991-1992 school year and was absent 37 days. Records in evidence establish that Leslie attended one day from September 1992 to February 1993 and was absent 87 days. In March 1993 the school records in evidence show that Leslie was transferred to Teen Aid at Abraham Lincoln High School. From March 1993 to June 1993 Leslie attended 16 days of school and was absent 61 days. After making one attempt to reach the family on September 23, 1993, the school discharged Leslie from Teen Aid High School on October 1, 1993 because she had not attended when school resumed in September 1993. Other than the fact of her pregnancy, no medical or other justification was offered by respondent M. for any of Leslie’s absences from school.
6. On February 22, 1993, CSS received a fourth DSS-2221 report of suspected child abuse or maltreatment from Coney Island Hospital concerning Leslie and respondent M.’s lack of supervision and educational neglect of Leslie as well as the alleged sexual abuse.
7. When confronted about her 14-year-old daughter’s pregnancy, respondent M. responded that Leslie is a woman. Respondent M. did not press criminal charges against Dominique P., stating he would marry her daughter. Dominique P.’s birth date (Jan. 24, 1973) and his exact age were established through hearsay.
8. The child’s statements to the social worker at the hospital are uncorroborated. Leslie told Ms. Nouri she has been sexually active since age 13 and has had five partners including Dominique P. She told Ms. Nouri Dominique P. lived in respondent M.’s home from December 25, 1992 until May 1993 and that she had sex with him in her home. Respondent M. denied both of these statements.
9. Prior to the filing of the petition, Leslie stated Dominique P. was the father of her child. After the petition was filed she denied it. Whether Dominique P. acknowledged to the hospital social worker or the caseworker from the Child Welfare Administration that he was the father of the baby is hearsay. When Dominique P. appeared in court, he did not ask the court to adjudicate him the father of Leslie’s baby.
10. Medical records in evidence show that Leslie had three or four prenatal visits to Coney Island Hospital between February 22, 1993 and May 14, 1993. Leslie was admitted to *606 the hospital on May 16, 1993 to deliver her baby at full term. Cultures were taken for three sexually transmitted diseases: trichomonas, gonorrhea, and chlamydia, and the result on each was positive.
CONCLUSIONS OF LAW

Abuse by Respondent M.

Family Court Act § 1046 (b) (i) requires that in a fact-finding hearing, any determination that a child is an abused or neglected child must be based on a preponderance of the evidence. (Matter of Tammie Z., 66 NY2d 1, 3 [1985].) This quantum of evidence is required in abuse cases as well as neglect cases. (Matter of Katrina W., 171 AD2d 250 [2d Dept 1991]; Matter of N. & G. Children, 176 AD2d 504 [1st Dept 1991].)
Family Court Act § 1012 (e) (iii) defines an abused child as a child under the age of 18 years, whose parent or other person legally responsible for the child’s care, "commits, or allows to be committed, a sex offense against such child, as defined in the penal law.” The abuse charges against respondent M. are based on allegations that she allowed Dominique P. to commit a sex offense against Leslie by allowing him to have sexual intercourse with her daughter in her home and become pregnant by him.
Under Family Court Act § 1046 (a) (vi) statements of the child pertaining to any "allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect.” The court may find the corroboration in "[a]ny other evidence tending to support the reliability” of the child’s statements (Family Ct Act § 1046 [a] [vi]). On the record before this court, the petitioner has proven by a preponderance of the evidence that Leslie is sexually active and became pregnant at 14 years of age. The petitioner has not proven, by a preponderance of the evidence, that Dominique P. is the baby’s father or that by his actions he has accepted the rights and obligations of parenthood. The petitioner has not proven, by a preponderance of the evidence, that Dominique P. resided in Leslie’s home or that he had sex with her there. If an abuse finding were to be made against respondent M., it would be because of her daughter’s teenage pregnancy.
A case similar to the instant matter was decided by the Third Department. In Matter of Toni D. (179 AD2d 910, 911 *607 [3d Dept 1992]), the Department of Social Services learned, during its investigation of a report of educational neglect, that Toni D. "slept with Scott in his bed nightly and had sexual [relations] with him on May 8, 1990.” Toni D. was a 13-year-old teenager and Scott was a 23-year-old man. A neglect petition was filed against Toni D.’s parents alleging they " 'individually and severally have encouraged and facilitated this relationship between their daughter * * * and * * * [Scott] with full knowledge that the two were engaged in a sexual relationship’ * * * they refused to not permit further contact between Toni and Scott after being advised to do so by law enforcement and social services personnel on May 11, 1990.” (Supra, at 911.) The Family Court dismissed the petition after trial and the Appellate Division affirmed, holding that the evidence was insufficient to show that the respondents knew their daughter was having a sexual relationship with Scott and found the evidence insufficient to show that they failed to prevent further contact between them once being advised of the relationship.
In New York, the power of the State to intervene in the family is permitted under Family Court Act § 1011 to the limited extent necessary "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being.” The purpose of the Family Court Act is subverted when it is used to impose particular moral or religious values under the pretext of "child protection.” In New York City, 13,999 babies were born to teenage mothers during 1991. Thirty-seven percent (5,186) of those babies were born to mothers between the ages of 15 and 17, and 3% (365) of those babies were born to mothers under the age of 15.[8] In New York State, pregnancies among teenagers ages 15 to 19 have increased 25% between the years 1980 to 1990, and 80% of teen mothers, in 1990, were unmarried.[9] What distinguishes this pregnant teen from the 5,000 others in New York City, and if the statute is interpreted as the Commissioner of Social Services urges, should petitions not be filed on the remainder?
This court recognizes there are sound social policy reasons underlying the public policy of discouraging sexual intercourse among unwed females under the age of 17. Certain *608 consequences, such as premature parenthood, forced marriage, single motherhood, adoption, abortion, and the need for medical or psychological treatment, must invariably be faced when children bear children. (People v Dozier, 72 AD2d 478, 483 [1st Dept 1980].) A 1990 report on teenage parents and their children identifies these additional consequences: the serious risk of becoming a high school dropout, long-term welfare dependency, chronic un- and under-employment, and the perpetuation of intergenerational poverty.[10] For these reasons, the statutory rape laws (People v Whidden, 51 NY2d 457 [1960]) [11] and the age of consent (People v Dozier, supra) have been upheld, and the perpetrators continue to be punished for their behavior.[12] To suggest that parents should similarly incur legal liability for the sexual activities of their children, however, fails to take into account the reality that the degree of supervision a parent is able to exert diminishes as a child’s freedom, independence, age, and privacy increase. In addition, it fails to recognize that the nature of parental supervision is frequently determined by the age of the parent, by culture, by religion, and by the child’s gender. Moreover, the imposition of legal liability presupposes that premature sexual activity occurs only in children whose parents do not teach proper moral values or offer role models consistent with that teaching, and fails, as well, to reflect an awareness that teenage pregnancies are the product of behaviors ranging from experimentation to outright defiance of parental authority.
*609 Assuming section 1012 (e) (iii) creates a cause of action for abuse against parents whose teenage daughters are sexually active and become pregnant, was it also the intent of the Legislature to prosecute the parents of their male teenage partners? Would such an interpretation require mandated reporters to notify the State Central Registry of all pregnant teenagers, or those whom they have reasonable cause to believe are pregnant, who come before them in their professional or official capacities?[13] Teenagers become pregnant when in the care of their parents as well as in the care and custody of Departments of Social Services, often as a consequence of "[the] practice of placing unrelated teenagers of different sexes in the same [foster] home.” (Matter of C., 160 Misc 2d 151, 154 [Fam Ct, NY County].) Would not this same "legislative intent” bring within its reach the Commissioner as well?
If the statute is interpreted as broadly as the Commissioner asks this court to do, what must a parent do to avoid becoming a respondent in a child abuse proceeding? Faced with the reality of a sexually active teenager, now pregnant, a reasonable parent might elect to maintain the young couple in the home under his/her watchful eye. The alternative response, expression of vociferous disapproval, could provoke the child into running away from home to live in the streets or with a sex partner in circumstances unknown to the parent.
Of relevance to this court’s interpretation of the scope of Family Court Act § 1012 (e) (iii) is the enactment of section 15 (3) of the Domestic Relations Law which empowers this court to give written approval to marry to a person less than 16 years of age.[14] Historically, these petitions have been occasioned by a pregnancy and the family’s desire to avoid the shame of an out-of-wedlock child. Surely the Legislature did not intend to give the Commissioner grounds to commence an abuse proceeding against a parent who petitions the court for such an order and who consents to the marriage.
This court believes any cause of action for abuse under Family Court Act § 1012 (e) (iii) arising out of a teenage *610 pregnancy must be limited to those parents who fail to intervene in forced sexual relationships of which they have personal knowledge. The sanctions in the Penal Law become more severe as the age disparity of the participants increases. If article 10 is to be used to prosecute parents of pregnant teenagers, a similar analysis might be useful in coming to a determination of whether, on different facts, an abuse finding should be made. The five-year age discrepancy between the participants in this case is not, in this court’s view, a sufficient basis to impose liability on the parent.[15]

Neglect by Respondent M.

Article 65 of the Education Law, section 3205 (1) (a), requires "each minor from six to sixteen years of age” to attend full-time instruction in school. The purpose of the State’s compulsory education law "is to ensure that 'children are not left in ignorance, that from some source they will receive instruction that will fit them for their place in society.’ ” (Matter of Andrew TT., 122 AD2d 362, 364 [3d Dept 1986].) Section 3205 (3) of the Education Law grants to cities of a certain size the power to "require minors from sixteen to seventeen years of age who are not employed to attend upon full-time day instruction.” The Chancellor of the Board of Education in New York City, being a City described in section 3205 (3), has promulgated Rule A-201 making full-time attendance compulsory for unemployed minors through age 17.
Under section 1012 (f) (i) of the Family Court Act, a "neglected child” is defined as "a child less than eighteen years of age * * * whose physical, mental or emotional condition has *611 been impaired or is in imminent danger of becoming impaired as a result of the failure of [the] parent * * * to exercise a minimum degree of care (A) in supplying the child with adequate * * * education in accordance with the provisions of part one of article sixty-five of the education law * * * or * * * in providing the child with proper supervision or guardianship.” The elements of a cause of action for educational neglect are twofold. First, there must be a showing that the child did not regularly attend school and second, there must be a showing that the child has suffered impairment, or is likely to suffer impairment, as a consequence of the parent’s acts or omissions. Once such proof is established, the burden shifts to the parent to offer evidence showing the minor is "attending school and receiving the required instruction in another place” (Matter of Christa H., 127 AD2d 997 [4th Dept 1987]), or that there is a reasonable justification for the child’s absences (Matter of Jennifer N., 173 AD2d 971 [3d Dept 1991] [medically excused]).
The case law interpreting article 10 as it relates to educational neglect does not support the Commissioner’s contention that "impairment” may be inferred from the sheer absence of a child from school. To the contrary, parents who provide their children with private schooling or adequate home instruction (Matter of Andrew TT., supra), or who arrange home tutoring (Matter of Iesha J., 183 AD2d 573 [1st Dept 1992]), will not be found neglectful. For this reason, the statute requires proof that the parent is not providing "minimum care and that, as a result, the physical, mental or emotional condition of the child has been impaired.” (Matter of Shelley Renea K., 79 AD2d 1073 [3d Dept 1981].) The Third Department has held that even when a child’s absences are unexcused, it is the petitioner’s burden to show that the absences had an "adverse impact upon the child’s education.” (Supra, at 1074 [13 unexcused absences and tardy a number of other times]; Matter of Jennifer N., supra [nine absences in a month]; Matter of Jessica Y., 161 AD2d 368 [1st Dept 1990].) Only when the number of absences reaches the extreme and continues for an extended time without parental action may the court draw an inference of impairment. In Matter of Jovann B. (153 AD2d 858 [2d Dept 1989]), the Second Department drew an inference of imminent danger where an eight-year-old special education student missed 49 days of school in 1984 to 1985, 64 days of school in 1985 to 1986, and missed the entire month of September 1986. Both Leslie and Ferdinand *612 have missed an excessive amount of school which enables this court to draw the inference of impairment permitted in Jovann B.
The primary neglect charges against respondent M. are based upon her failure to secure the regular attendance of her children upon instruction in violation of Education Law § 3205. The facts show she did nothing to facilitate Ferdinand’s reenrollment and acquiesced in Leslie’s absence, attributing that child’s nonattendance to her pregnancy without providing any medical documentation showing a physical inability to go to school. Both of respondent M.’s children are students in special education, whose learning needs require individualized instruction and the use of specialized techniques.[16] Children in special education, who miss school frequently, lose more than just sequential educational information. These children also lose the daily behavioral modification and/or reinforcements incident to their learning. Moreover, Leslie was enrolled in a specialized school program designed for pregnant teens and the instruction she would have received could have benefitted her as a new mother. Ferdinand is emotionally disturbed and his absence from school has deprived him of a chance to develop the coping and management skills he needs to succeed in future employment.
DECISION
Because this court does not believe Family Court Act § 1012 (e) (iii) creates a cause of action against parents for abuse when their teenage daughters became pregnant through unforced sexual relations between peers, respondent M.’s outstanding motion to dismiss the abuse allegations is granted. Because respondent M. failed to secure the regular attendance of Leslie and Ferdinand in school, a finding of educational neglect is made. Ferdinand was on remand to the Commissioner and in placement at the conclusion of the hearing. Whether the proceeding should be dismissed in its entirety, pursuant to Family Court Act § 1051 (c), must await a dispositional hearing, at which time the current status of the case will be made known to the court. CSS is directed to prepare an investigation and report. The matter is adjourned to June 14, 1994 for disposition.

. On March 11, 1993 the petition filed against respondent M.’s 17-year-old child, Abigail S., was withdrawn after the Commissioner of Social Services learned she has two children, is married and living in Queens.

. This allegation of the petition was amended on September 13, 1993 to allege a violation of Penal Law § 130.20 instead of Penal Law § 130.38, and to delete the sentence concerning Leslie’s pregnancy.

. On July 15, 1993 Dominique P. moved to dismiss the petition under CPLR 3211 (a) (8) on the ground that the court lacks jurisdiction over his person since no facts were alleged which would establish that he was a "person legally responsible” for the children as defined in Family Court Act § 1012 (g). Since the petition failed to allege any facts showing that respondent Dominique P. was a regular member of the household, acting as the functional equivalent of a parent, this court determined it lacked jurisdiction over his person and granted the motion.

. Penal Law § 130.20 provides that "[a] person is guilty of sexual misconduct when: 1. Being a male, he engages in sexual intercourse with a female without her consent.” Under Penal Law § 130.05 (3) (a), "[a] person is deemed incapable of consent when he is * * * less than seventeen years old.” Sexual misconduct is a class A misdemeanor.

. The Commissioner argues respondent M. should have pressed charges against Dominique P. for statutory rape and any other crimes he may have committed by having sexual relations with Leslie. A careful reading of the Penal Law, nonetheless, reveals that no charges for any of the statutory rape crimes could be filed because of the ages of the participants. Similarly, the facts do not support charges for the crimes of sexual abuse.

. Social Services Law § 412 (11) defines a report as unfounded when an investigation is unable to determine "that some credible evidence of the alleged abuse or maltreatment exists.”

. Ferdinand, who had been in placement as a result of a PINS petition, was released to respondent M. during the summer of 1992.

. New York City Department of Health, Bureau of Vital Statistics, Bureau of Maternity Services and Family Planning (Dec. 29, 1992).

. United States Department of Commerce, Bureau of the Census, 1990 Census of Population and Housing, Summary Tape Files 1.

. Citizens Committee for Children and the Franklin and Eleanor Roosevelt Institute, For a Better LYFE-A Study of School Based Day Care and Support Services’ Program for Teenaged Parents and their Children, New York: 1990.

. Judge Meyer, in the dissent in People v Whidden (supra, at 463), recognized the inconsistency in the majority’s decision upholding the validity of the statutory rape statutes on public policy grounds when pregnancies can result from sexual activity among teenagers which is not proscribed. The affirmative defense to sexual abuse in the third degree (Penal Law § 130.55) allows teenagers over the age of 14 and less than the age of 17 to engage in sexual relations with a person less than five years older than themselves. Clearly these acts can also result in pregnancies, but a similar legislative concern for the well-being of young mothers is curiously absent from the reasoning underlying this "heavy necking” defense. (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 130, at 571.)

. There are no facts in this record to suggest the relationship between Dominique P. and Leslie C. was anything but unforced experimentation. For this reason, Leslie is unlikely to testify against Dominique P., and a criminal proceeding is unlikely to result in conviction, notwithstanding the child’s age.

. Social Services Law § 413.

. The Domestic Relations Law authorizes sexual intercourse within the confines of marriage by persons less than 16. This would suggest, then, that the State’s real interest in proscribing teenage sexuality is prompted by moral and economic considerations, rather than a concern for a teenage mother’s physical and emotional well-being.

. A neglected child is defined in Family Court Act § 1012 (f) (i) as a "child less than eighteen years of age * * * whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care * * * (B) in providing the child with proper supervision or guardianship.” It has been held that the definition of neglect is "sufficiently elastic to embrace the situation[s] 'in which a parent "allows” the child to be impaired.’ ” (Matter of Scott G., 124 AD2d 928, 929 [3d Dept 1986].) In these situations, the trier of fact must determine "whether a reasonable and prudent parent would have acted, or failed to act.” (Supra; see also, Matter of New York City Dept. of Social Servs. [Anna Marie A.] v Elena A., 194 AD2d 608 [2d Dept 1993].) For the reasons set forth above, the petitioner has failed to demonstrate that respondent M. did not exercise a minimum degree of care with respect to her child Leslie, or that she did not act as a reasonable and prudent parent. Therefore, the court declines to make a finding of neglect against respondent M. based on inadequate supervision and guardianship.

. As students with learning difficulties, Leslie and Ferdinand are entitled to receive instruction in special education until the age of 21, under section 4401 (1) of the Education Law.