■ In the Matter of AISHIA O. and Another, Children Alleged to be Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MARY Q., Appellant. [725 NYS2d 738] —Peters, J. Appeal from an order of the Family Court of Broome County (Danaher, Jr., J.H.O.), entered September 14, 1999, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's children to be neglected, and placed them in petitioner's custody for a period of 12 months.

In March 1999, petitioner commenced this proceeding alleging that respondent neglected her two children, Aishia O. (born in 1984) and Charles P. (born in 1985) by, *inter alia*, refusing to participate in recommended services after Aishia was voluntarily placed in petitioner's custody and allowing Charles to miss a substantial amount of school without verified medical cause or appropriate alternative schooling. Petitioner further alleged that respondent refused to seek treatment for her psychiatric disorders which impacted both her ability to address her own needs and those of her children. Following a factfinding hearing, Family Court found that respondent had ne-

glected her children and, by dispositional order, placed them in petitioner's custody until August 31, 2000.* This appeal followed.

Pursuant to the Family Court Act, a child is neglected when his or her

"physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent * * * to exercise a minimum degree of care * * *

"in supplying the child with * * * education in accordance with the provisions of part one of article sixty-five of the education law, or * * *

"with proper supervision or guardianship" (Family Ct Act § 1012 [f] [i] [A], [B]).

As to Aishia, the record reflects that for almost two years prior to the filing of the neglect petition, the child has not resided with respondent. She was first placed at a crisis center due to problems in respondent's home which were later the subject of two indicated reports in June 1997 for inadequate guardianship and emotional neglect. Thereafter, unwilling to take Aishia home, respondent signed a voluntary transfer of custody on July 1, 1997. According to respondent, there were several safety reasons supporting outside placement. First, she testified that she had to call the police in or about May 1997 because an unidentified man attempted to kick open the door to her home when he became aware that she had recorded his license plate after he ran over a stray cat. She testified that at about the same time, she was forced to call the police again when a different man kicked open the door to her home and threatened to kidnap Aishia. A third incident, occurring in close succession to the first two, took place when 20 or 30 children swarmed the backyard of her home and a "boy from the city" came after the others with a knife, causing Aishia to be traumatized. These episodes, coupled with the scheduling of surgery for her three months later, in October 1997, purportedly warranted the placement of Aishia outside her home. No documentary proof supported her assertions of the need for police intervention.

Testimony from the child protective caseworker, supported

* Although the dispositional order expired in August 2000, we do not find this appeal moot since a neglect adjudication is " 'a permanent and significant stigma which is capable of affecting a parent's status in potential future proceedings' " (*Matter of James HH.*, 234 AD2d 783, *lv denied* 89 NY2d 812, quoting *Matter of Matthew C.*, 227 AD2d 679, 680-681; *see, Matter of Ronnie XX.*, 273 AD2d 491, 493 n 2).

by documentary evidence, revealed that even after respondent moved to a different residence, no efforts were made to retrieve her daughter. She also refused to participate in the plan of counseling and therapy that was devised by petitioner to facilitate the process of reconciliation and reunion, and flouted all efforts towards regular and consistent visitation with Aishia.

In our view, Family Court's assessment of respondent is "entitled to great deference especially where the critical evidence is testimonial, in light of the court's ability to assess the witnesses' credibility" (*Matter of Nathaniel TT.*, 265 AD2d 611, 614, *lv denied* 94 NY2d 757). With a sound and substantial basis in the record to support the court's determination that respondent's testimony lacked all credibility and that, due to her behavior, Aishia's mental and/or emotional health was impaired or in imminent danger of becoming impaired, the determination of neglect as to her daughter was well grounded (*see, Matter of Chantel ZZ.*, 279 AD2d 669, 671-672; *Matter of Heidi CC.*, 270 AD2d 528, 530).

We reach a similar conclusion concerning Charles. Testimony revealed that during the 1997-1998 school year, Charles was assigned to the West Middle School in a program designed for students with behavioral problems. Students in such program were offered individual and group counseling along with behavior management and other social programs for the purpose of reorientation into a regular school setting. As of January 1998, however, Charles ceased enrollment in that program due to his 50% absentee rate; his teacher's testimony confirmed that his lack of attendance had a detrimental effect upon his education.

Charles' next placement was at the Broome-Tioga BOCES program. During the entire 1998-1999 school year, Charles attended school only 35 days and, as a result, two State reports, one in November 1998 and the other in January 1999, were indicated against respondent for educational neglect and inadequate guardianship. Respondent asserted that she ceased sending her son to the BOCES program because he was "body-slammed" by a teacher there and that, instead, she home schooled him after her request for a home teacher proved futile.

With educational neglect established when " 'a minor child is not attending a public or parochial school in the district where the parents reside' " (*Matter of Chad V.*, 265 AD2d 607, 608, *lv denied* 94 NY2d 757, quoting *Matter of Christa H.*, 127 AD2d 997), respondent bore the burden of demonstrating that the requisite instruction was being received from another resource. Her testimony attempting to prove compliance was wholly

rejected as incredible. Despite respondent's further contention that petitioner failed to prove, as was required (*see, Matter of Jovann B.*, 153 AD2d 858), that these absences had an adverse impact upon Charles' education, again we find sufficient evidence establishing that, as a child with special needs, he "los[t] more than just sequential educational information" (*Commissioner of Social Servs. [Leslie C.]*, 161 Misc 2d 600, 612). With Charles' teacher confirming that he failed to make gains on both behavioral and social levels, along with the benefit which might have enured from further services that were available (*see, id.*), Family Court's determination that neglect was established by a preponderance of the evidence will remain intact (*see, Matter of Chad V., supra*).

As to the technical deficits in the order issued, we agree with respondent's contention that Family Court failed to comply with the mandates of Family Court Act § 1051 (a) by failing to enunciate the specific grounds for its findings of neglect. However, remittal is not necessary (*see, Matter of Anita U.*, 185 AD2d 378, 379). Having the benefit of a full record allows us, in the interest of justice, to rely on our factual review power to make the requisite findings and modify the order if necessary (*see, id.; see also, Matter of New York City Dept. of Social Servs. [Anna Marie A.] v Elena A.*, 194 AD2d 608, 610; *Matter of Nassau County Dept. of Social Servs. [Erika K.] v Steven K.*, 176 AD2d 326, 329).

As the articulated findings in Family Court's August 5, 1999 fact-finding decision are fully supported by the record, we find, based upon both documentary and testimonial evidence, that respondent engaged in a pattern of failing to plan for the return of Aishia and failing to follow through with the recommendations made by petitioner for counseling and psychological/psychiatric evaluations. As to Charles, he was permitted to be excessively absent from school without verifiable medical excuse or enrollment in an alternative academic program. With a preponderance of the evidence supporting the conclusion that these deficiencies, pertaining to each of these children, established all of the necessary elements to support a finding that respondent neglected her children, the absence of prejudice resulting from the court's order renders the error harmless (*see, Matter of Rachel G.*, 185 AD2d 382, 383-384; *see also, Matter of Ashley AA.*, 212 AD2d 937, 939).

Crew III, J. P., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.