■ In the Matter of AMANDA M., a Child Alleged to be Neglected. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; GERALDINE N., Appellant. [812 NYS2d 708]—

Peters, J. Appeal from an order of the Family Court of Cortland County (Campbell, J.), entered August 6, 2004, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's grandchild to be neglected.

In January 1989, respondent was granted custody of her granddaughter, Amanda (born in 1988), who suffered from numerous physical ailments from the time of her birth. In 1991, the child was diagnosed with Epstein-Barr virus which continued to reactivate either into further episodes of that virus or mononucleosis. In 1997, she sustained a cerebral concussion and, by 1998, she began to experience hemiplegic migraines, a condition causing severe headaches and vomiting; it was not medically diagnosed until 2001.

In 1993, the child was enrolled in public school and by June 1997, due to her excessive absences, an individualized education plan was devised for her. After she missed 403 days of school between kindergarten and fourth grade, the school filed two person in need of supervision (hereinafter PINS) petitions. When the severity of the child's medical condition was confirmed by documentation provided by respondent in October 2001 and the school's own investigation, the PINS petitions were closed; the child's physician recommended that she be tutored at home for the remainder of the 2001-2002 school year.

The following year, respondent submitted the requisite

documentation for home-schooling. Despite a review with respondent regarding the necessary filings and regulations, she was late in submitting the first three quarterly reports. She also failed to timely request a standardized test form for the child. When respondent failed to submit the fourth quarterly report, the child was denied academic credit for the 2002-2003 school year. Even though respondent claimed that the failure to submit such report was due to the child's sexual assault in May 2003, no medical documentation confirmed such allegation and no attempt at sustained psychological counseling was made until July 2003 when the child threatened suicide. When the child finally did receive counseling, her sessions were terminated due to nonattendance.

In October 2003, this proceeding was commenced, alleging that respondent neglected her grandchild by not adequately supervising her or providing her with sufficient educational and medical care (*see* Family Ct Act § 1012 [f] [i]). Upon Family Court's finding of both educational and medical neglect, this appeal ensued.

Despite our broad power of review, we typically accord deference to the credibility determinations made by Family Court unless they lack a sound and substantial basis in the record (*see Matter of Peet v Parker,* 23 AD3d 940, 941 [2005]; *Matter of Willis-Marsh v Wilkerson,* 22 AD3d 977, 978 [2005]). To find that a child is neglected, it must be shown that the child's "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care" (Family Ct Act § 1012 [f] [i]). A finding of neglect can be based on the failure of the child's guardian to provide adequate education or medical care (*see* Family Ct Act § 1012 [f] [i] [A]), and it must be supported by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]; *Matter of Chantel ZZ.,* 279 AD2d 669, 670-671 [2001]).

Reviewing first the finding of educational neglect, Family Court properly found a "significant, unexcused absentee rate that [had] a detrimental effect on the child's education" (*Matter of Ember R.,* 285 AD2d 757, 758 [2001], *lv denied* 97 NY2d 604 [2001]) and that respondent had not demonstrated that the child received requisite instruction from a source other than the public school (*see Matter of Aishia O.,* 284 AD2d 581, 583-584 [2001]). Despite the contentions of the Law Guardian, testimony established that respondent never took advantage of the special education services that could have been secured even with

home-schooling. The evidence also showed that the child did not receive acceptable instruction when she was not in school and that this lack of instruction not only hampered her academic development, but also resulted in the denial of credit for the 2002-2003 school year; she was ultimately placed, not promoted, into the sixth and seventh grades. It was also shown, by a preponderance of this evidence, that respondent did not provide an adequate alternative education (*see Matter of William AA.,* 24 AD3d 1125, 1125-1126 [2005]; *see also Matter of Chad V.,* 265 AD2d 607, 608 [1999], *lv denied* 94 NY2d 757 [1999]) and "that, as a child with special needs, [s]he 'los[t] more than just sequential educational information' " (*Matter of Aishia O., supra* at 584, quoting *Commissioner of Social Servs. [Maria M.],* 161 Misc 2d 600, 612 [1994]).

Next addressing the medical neglect determination, we find the record to demonstrate that respondent provided adequate care for the child's physical ailments. Focusing, instead, on the child's emotional and psychological needs, we find that aside from a single therapy session after the sexual assault, no other counseling was provided until the child made a suicide attempt in July 2003. Upon her admission to the hospital emergency room after the attempt, the hospital's intake notes reflect that she heard voices, was paranoid all of the time, and had thoughts of hurting both herself and her grandmother. When counseling ultimately commenced, it was terminated due to missed appointments. According deference to the credibility findings made by Family Court (*see Matter of Dunaway v Espinoza,* 23 AD3d 928, 929 [2005]), we find a preponderance of the evidence to support the finding of medical neglect.

Having reviewed the evidence, law and circumstances of a case, in their totality, at the time of the representation (*see People v Benevento,* 91 NY2d 708, 712 [1998]; *People v Baldi,* 54 NY2d 137, 147 [1981]), we also find respondent to have received meaningful representation. "[C]areful to distinguish between true ineffectiveness and losing tactics or unsuccessful efforts in advancing appropriate defenses" (*People v Stultz,* 2 NY3d 277, 283 [2004]), the record reflects that counsel made appropriate motions on respondent's behalf and conducted insightful direct and cross-examinations. While we acknowledge the specific deficiencies alleged by respondent, we do not find them to rise to a constitutional dimension.

Mercure, J.P., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.