■ In the Matter of JALESA P., a Child Alleged to be Neglected. MITCH KESSLER, as Attorney for the Child Appellant; GEORGIA P., Respondent. JASON Q., Nonparty Respondent. [904 NYS2d 564]—

Kavanagh, J. Appeal from an order of the Family Court of Schenectady County (Taub, J.H.O.), entered August 31, 2009, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.

In 2006, respondent (hereinafter the mother), on consent of Jason Q. (hereinafter the father), obtained primary physical custody of their daughter (born in 2000).[1] Two years later, in April 2008, the mother consented to the entry of an order that resulted in the child being placed in the care of Heidi S., the mother of another child by the father, from Tuesday through Friday each week.

Seven months later, in November 2008, petitioner, the attorney for the child, received permission from Family Court to file a neglect petition (see Family Ct Act § 1032 [b]), in which it was alleged that the mother had inflicted corporal punishment on the child, exposed her to domestic violence, routinely abused drugs and alcohol in the child's presence, neglected the child's

***

1. The father was named in the underlying petition as a nonparty respondent and appeared in the proceeding before Family Court in support of the petition. While he did not file a notice of appeal and, therefore, cannot be considered an appellant, the father has submitted an appellate brief, which supports the position of petitioner that the mother should be adjudicated to have neglected the child.

personal hygiene and failed to provide her with proper supervision, clothing and appropriate medical care.[2] Family Court (Taub, J.H.O.)[3] held a Family Ct Act § 1027 hearing and determined that the child's interests did not require her to be removed from the mother's care pending a final order of disposition on the neglect petition. Thereafter, the parties agreed that Family Court would rely on the evidence presented at the section 1027 hearing—as well as educational records submitted by petitioner in support of the petition—to determine whether the child was neglected while in the mother's care. Based on that record, Family Court found that the evidence presented was insufficient to support such a finding and dismissed the petition. Petitioner now appeals.

In a Family Ct Act article 10 proceeding, the petitioner must establish by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]; *Matter of Richard SS.*, 29 AD3d 1118, 1121 [2005]), "first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care" (*Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *see* Family Ct Act § 1012 [f] [i] [B]; *Matter of Anthony Y. [Kelly AA.—Paul AA.]*, 72 AD3d 1419, 1421 [2010]; *Matter of Alyssa OO. [Andrew PP.]*, 68 AD3d 1158, 1159 [2009]). Petitioner contends that he met this burden with evidence that was presented at the hearing and made part of the record per the parties' stipulation.

Initially, in support of his contention that the mother inappropriately used corporal punishment while caring for the child, petitioner points to testimony of the father and Heidi S. to the effect that they observed a bruise on the child's face that they claim the child told them occurred when the mother struck her. The mother denied striking the child and claimed that the bruise was the result of accidental contact. While a single incident of corporal punishment may provide the basis for a finding of neglect (*see* Family Ct Act § 1012 [f] [i] [B]; *Matter of Omavi A. [Jaimyce A.]*, 68 AD3d 1463, 1464-1465 [2009]; *Matter of Aaliyah Q.*, 55 AD3d 969, 970 [2008]), we note that Child Protective Services investigated this claim and determined that the bruise was the result of an isolated incident. Given that there was no evidence presented during the hearing that this

---

2. Schenectady County Department of Social Services refused to initiate such a proceeding.

3. The parties consented to the matter being heard by a Judicial Hearing Officer.

incident was the manifestation of persistent and ongoing activity on the part of the mother directed at the child, and according due deference to Family Court's assessment of the credibility of the witnesses who testified at the hearing, its determination that the bruise was not the result of the child being subjected to corporal punishment was supported by a preponderance of the evidence.

More troubling is the fact that the child, while in the mother's care, was often late for school and had a large number of unexcused absences that obviously played a role in the child having to repeat one year of elementary school.[4] In that regard, a finding of neglect "may be premised upon proof that a child has a significant rate of unexcused absences from school which detrimentally affects the child's education, and that the requisite education was not provided from a source other than the public school" (*Matter of Ashley X.*, 50 AD3d 1194, 1195 [2008]; *see* Family Ct Act § 1012 [f] [i] [A]; *Matter of Shawndalaya II.*, 31 AD3d 823, 824 [2006], *lv denied* 7 NY3d 714 [2006]; *Matter of Amanda M.*, 28 AD3d 813, 814 [2006]; *Matter of Benjamin K.*, 28 AD3d 810, 811 [2006]; *Matter of Christopher UU.*, 24 AD3d 1129, 1131 [2005]). While the child's attendance rate at school leaves much to be desired, it has noticeably improved, especially since the current custody order was implemented and the child spends much of the school week with Heidi S. She also is receiving additional help to address her academic needs and, by all accounts, has performed well during the most recent school year. Given that the mother has taken a more active role and has become more involved in seeing that the child's educational needs are being met, Family Court's finding on this issue is supported by the record.

As for the child's hygiene and her medical care, a finding of neglect may be entered where, "though [being] financially able to do so or offered financial or other reasonable means to do so," a parent fails to provide the child with adequate clothing and basic medical care (Family Ct Act § 1012 [f] [i] [A]; *see Matter of Larenzo SS.*, 289 AD2d 880, 881-882 [2001]). Here, the child contracted ringworm and head lice, and ultimately was determined to need eyeglasses. However, contrary to the suggestion implicit in the petition, the mother did not ignore these issues; the ringworm and head lice were both treated while the child was in the mother's care and were resolved. Further, when the mother became aware of the child's ophthalmologic needs,

---

4. School records establish that in addition to being chronically late, the child had at least 30 unexcused absences during a four-year period that she attended school.

she had the child examined by the school nurse and took her to a pediatrician. Moreover, the mother's decision to wait for insurance coverage to purchase the child's eyeglasses, given her financial circumstances, cannot be said to constitute neglect (*see e.g. Matter of David J.*, 205 AD2d 881, 884 [1994], *appeal dismissed* 84 NY2d 905 [1994]).[5]

As for the child's hygiene and lack of suitable clothing, the mother testified that the child bathes every day and is appropriately dressed for the weather. While the father and Heidi S. took issue with this testimony, the record simply fails to support petitioner's contention that the child was harmed or her welfare was compromised by the manner in which the mother addressed these needs (*compare Matter of David II.*, 49 AD3d 1093, 1094-1095 [2008]).

Petitioner also alleged that the child, while in the mother's care, was routinely exposed to arguments and confrontations that occurred between the mother and the father, and later between the mother and her current boyfriend. While the mother and the father have had an acrimonious relationship and assaults emanating from these disputes have undoubtedly occurred, the mother testified that none has taken place in the child's presence, and no evidence has been presented that the child's physical, mental or emotional state has ever been threatened or, in fact, impaired as a result of these confrontations with the father or those that the mother had with her current boyfriend (*see Matter of Alyssa OO. [Andrew PP.]*, 68 AD3d at 1160-1161; *compare Matter of Michael WW.*, 20 AD3d 609, 611-612 [2005]).

Finally, petitioner's claims that the child was endangered by the mother's practice of allowing her to play outside the home while unsupervised and that the mother abused alcohol and marihuana in the child's presence are not supported by the credible evidence presented at the hearing (*compare Matter of Paolo W.*, 56 AD3d 966, 967 [2008], *lv dismissed* 12 NY3d 747 [2009]).

Mercure, J.P., Malone Jr., Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

---

5. Before the mother's Medicaid became effective, Heidi S. purchased glasses for the child at the end of November 2008.